### Thorn *vs.* Moser.

An action for words will not lie against a party who speaks in the performance of any duty legal or moral, public or private, or in the assertion of his own rights, or to vindicate or protect his interest, without proof of express malice, though the charge imputed be without foundation. *Per* Beardsley, J.

Where the defendant had a forged check passed to him by a stranger, and afterwards a relative of the plaintiff having heard that the defendant had charged tho plaintiff with the forgery, of his own accord applied to the defendant, (saying however that he came at the plaintiff's request) for information respecting the charge and to convince the defendant that he was mistaken, and thereupon the defendant told him that the plaintiff was unquestionably guilty; and proposed to arrange the matter by receiving the amount obtained on the check, and on that occasion persisted in the charge after being warned not to do so; *held,* that the conversation was not privileged, and that the plaintiff was entitled to recover without proof of express malice.

Nor would it be privileged if the plaintiff had actually procured the person to go to the defendant for the purpose mentioned. *Per* Beardsley, J.

Slander for words imputing forgery, tried before Kent, late C. Judge, at the New-York circuit, in January, 1844.

On the trial it appeared that a forged check had been passed to the defendant and his copartner in business, in payment for goods sold by them to a person who called himself Captain Wait, they advancing in money the difference between the amount of the goods and the check. This action was brought for charging the plaintiff with being guilty of the crime of forgery in passing the check. One Leonard, a witness for the plaintiff, testified that he was a connection of the plaintiff by marriage; that having heard that the defendant had charged this crime upon the plaintiff, he called upon the defendant at his store and told him he had been so informed by the plaintiff, and

Thorn *v.* Moser.

that he had called for the purpose of having the matter settled ; that the defendant said it could easily be settled by payment of the amount of the check ; to which the witness replied that the defendant had quite mistaken him, that payment was out of the question ; that his object was to investigate the matter and satisfy the defendant and his partner that they were wrong in imputing the crime to the plaintiff; to which the defendant said there was no mistake about it—there was no question the plaintiff was the man who committed the fraud. To this the witness replied there *was* a great mistake about it, and he denied that the plaintiff was guilty and warned the defendant not to repeat the charge—and said that the plaintiff must be aware that the defendant could not submit to it; that the defendant afterwards repeated that there was no doubt but that he was the guilty man—the one who passed the check, and that they could prove it, and said that the amount had better be paid, and the matter hushed up on account of the respectability of the plaintiff's connections. That he, the witness, answered that he had not come there to compound a felony. The witness stated that it was finally arranged that the plaintiff and defendant should meet at a lawyer's office the next morning, and that a person who had seen the individual calling himself Captain Wait should see the plaintiff and say whether he was the man. The meeting accordingly took place, but nothing material to the case occurred.

At the close of the direct examination of this witness the defendant's counsel moved to strike out his testimony, on the ground that it appeared that the conversation was elicited by the witness as the friend of the plaintiff and on his behalf, and was held with a view to the settlement of a supposed slander, and therefore could not be used as the foundation of an action. The motion was overruled, and the defendant's counsel excepted. He afterwards cross-examined the witness, who stated among other things that he did not go to the defendant's store or hold the conversation with him at the plaintiff's request, and that he did not so state while at the store. He also stated that he had not mentioned to the plaintiff that he was going to the defendant's store.

The defendant's counsel in his opening placed the defence solely on the ground "that the defendant had probable cause and acted without malice," but he subsequently insisted that the words were used in the course of a privileged communication, and for that reason were not actionable. The defendant called several witnesses, who testified that the plaintiff resembled the person who passed the check to the defendant and his partner, and they thought he was the same person; but in the course of the trial the defendant's counsel disclaimed defending on that ground, and admitted without qualification that the plaintiff was not the person and was not guilty. These witnesses testified that Leonard, when he came to the defendant's store and held the conversation testified to by him, stated that he came at the plaintiff's request to see about the charge brought against him.

After the defendant had rested, Mr. Davison, who was attorney for the plaintiff, was examined as a witness on his behalf, and testified that he accompanied Leonard, at his request, to the defendant's store on the occasion referred to, but that he did not go at the plaintiff's request, and had not then seen the plaintiff on the subject, and that he had not stated to any one that he went at the plaintiff's request; but that on their return to the witness' office, he found the plaintiff there and informed him of what had passed at the defendant's store, to which he made no objection.

The judge charged the jury, that if Leonard was authorized by the plaintiff to investigate the matter, what was said by the defendant to Leonard in the course of conversation for that purpose was a privileged communication: but if Leonard was not so authorized by the plaintiff, although he declared he was, the words were not privileged. The defendant's counsel excepted to the last clause of the charge; and he also insisted that the words were privileged, and were not actionable unless express malice was shewn, and requested the judge so to charge, which he declined; and the defendant again excepted.

The jury found a verdict for the plaintiff for $200 damages, and the defendant now moved for a new trial on a case.

Thom *v.* Moser.

*J. W. Gerard*, for the defendant, insisted that the interview between the defendant and Leonard was a privileged communication; that it was sought for by Leonard, a relative of the plaintiff and the plaintiff's counsel, with a view to investigate the question as to who was the guilty party in an admitted forgery; that actual authority from the plaintiff to hold such conversation was not necessary in order to protect it. Such a strict rule would tend to check free investigation of admitted offences, and would be against public policy. Communications to friends or persons interested are protected, although the persons to whom they are made are not expressly sent by a party suspected of the offence. He cited *Howard* v. *Thompson*, (21 *Wend.* 319;) *O'Donaghue* v. *M'Govern*, (23 *id.* 26;) *Fowler* v. *Homer*, (3 *Camp.* 294;) *Blake* v. *Pilford*, (*Moody & Rob.* 198;) *Child* v. *Affleck*, (9 *Barn. & Cress.* 403;) *Toogood* v. *Spyring*, (1 *Cromp. M. & R.* 181;) 1 *Stark. on Sland.* 284, 5, 6, 290; *Purcel* v. *M'Namara*, (1 *Camp.* 199, *and note ;*) *Hooper* v. *Truscott*, (2 *Scott.* 672; 2 *Bing. N. Cas.* 457, *S. C.*) He also insited, that at all events it was necessary for the plaintiff to shew express malice and the want of probable cause; (*Howard* v. *Thompson, supra ;*) but that on the contrary probable cause was affirmatively shewn by the defendant. He likewise contended that the verdict was against evidence.

*Clinton De Witt*, for the plaintiff. The question of probable cause only arises where the communication is *prima facie* privileged. *Howard* v. *Thompson*, relied on by the defendant's counsel, was upon a communication to the government charging fraud upon a public officer, and there was never any doubt but that it was a privileged communication. It is conceded that preliminary proceedings entered into in good faith for the purpose of investigating an alleged criminal offence are protected. Such was the case of *Padmore* v. *Lawrence*, (11 *Adolph. & Ellis*, 380.) But such was not the character of the communication in this case. The motive of the witness was to convince the defendant that he was mistaken in suspecting the plaintiff, and the defendant's object was to obtain money for suppressing a

---

Thorn *v*. Moser.

---

prosecution, and not to obtain facts important to the ends of public justice. The counsel also referred to *Griffiths* v. *Lewis*, (9 *London Jurist*, 307 ;) *Allen* v. *Crofoot*, (2 *Wend.* 515 ;) *Burlingame* v. *Burlingame*, (8 *Cowen*, 141 ;) *Gilbert* v. *The People*, (*ante*, *p.* 41.)

*By the Court*, BEARDSLEY, J. The jury were instructed by the judge, that if the witness, Leonard, had been authorized by the plaintiff to investigate the slanderous charge previously made against him by the defendant, what was said by the latter to the witness in the course of that investigation was privileged, and for it no action would lie. As no exception was taken to this part of the charge, we are not required to express any opinion upon it, and I pass it by with the remark, that although the defendant could not well complain of it as prejudicial to his side of the case, it must receive various qualifications, not found in the bill of exceptions, before I could assent to its correctness. But the judge further charged that if the witness had not been so authorized by the plaintiff, and therefore was not his agent to investigate the matter, the slanderous words uttered by the defendant to the witness were not privileged, although the witness had declared that he was so authorized by the plaintiff. This was excepted to by the defendant's counsel, and it presents the only point in the case which deserves to be noticed.

In general the mere utterance of slanderous words constitutes a ground of action, and the plaintiff need only prove their speaking to authorize a recovery. But to this there are well known exceptions growing out of the occasion of speaking the words and the attendant circumstances. These may be such as to repel the legal presumption of malice, which usually attaches to the speaker of defamatory words, and may require the plaintiff, before he can recover, to prove the existence of malice in fact on the part of the defendant. Thus, whatever is said in the usual course of legislative or judicial proceedings, is privileged. Complaints made and charges preferred in the proper quarter, against public officers or private agents, are presumptively innocent. The same principle applies where a master, of

whom inquiry is made, gives a servant a bad character, as it does to numerous other cases. Indeed, whenever a person speaks in the performance of any duty, legal or moral, public or private, or in the assertion of his own rights, or to vindicate and protect his interest, no action will lie against him without proving express malice, however untrue what is said may be. (1 *Stark. on Slander, Wend. ed.* 1843, *ch.* 10 *to* 13.) " In general, an action lies for the malicious publication of statements which are false in fact, and injurious to the character of another (within the well known limits as to verbal slander;) and the law considers such publication as malicious, unless it is fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned. In such cases, the occasion prevents the inference of malice, which the law draws from unauthorized communications, and affords a qualified defence depending upon the absence of actual malice. If *fairly* warranted by any reasonable occasion or exigency, and honestly made, such communications are protected for the common convenience and welfare of society ; and the law has not restricted the right to make them within any narrow limits." ( *Toogood* v. *Spyring, Parke, B.,* 1 *C. M. & R.* 193.) So in *Smith* v. *Thomas,* (2 *Bing. N. C.* 372,) Chief Justice Tindal says: " The ground of defence intended to be set up by the defendant is, that the words were spoken on an occasion in which the exigencies of society demand that there should be the unlimited right to make inquiry on the one hand, and the unlimited freedom to communicate on the other, such communication being made without any malice against the plaintiff. There can be no doubt that where such an occasion occurs, and there is in the making of the communication the absence of express malice or malice in fact, the law holds the communication to be innocent, and to give no right of action to the plaintiff. In order, however, to constitute such a defence in any case, both circumstances must be found to concur ; and after the just occasion for the communication has appeared in proof, the issue must de-

pend on the existence or absence of express malice against the plaintiff."

Now, in the present case, even if the witness, Leonard, had untruly asserted his authority to investigate the matter, this could not furnish a justification or excuse for the slanderous charges then made by the defendant, and which were renewed and repeated after due caution by the witness. These assertions of the plaintiff's guilt were in no respect necessary for the purpose of apprising the witness of what had previously occurred, nor could they aid him in carrying forward his investigation. Had he even been, as he may have represented that he was, the plaintiff's agent to ascertain from the defendant him self what charges he had made, this, although it certainly would have justified the defendant in answering the inquiries made, and in thus repeating what he had previously said, would not have furnished an excuse for reasserting the calumnious charges. An attempt by a person who deems himself injured to ascertain truly what slanderous imputations had already been cast upon him, could hardly be allowed to justify their renewal. And if such must be the rule, as I think it is, where inquiry is made by the party in person or by his authorized agent, it cannot well be more favorable to the slanderer when the inquiry proceeds from one who falsely assumes to be agent, the party calumniated being in no sense present at the inquiry or when the slander was uttered. I confess I see no ground on which it can be held that these slanders were uttered on an occasion which gives them privilege. It was therefore unnecessary to prove actual malice, and no question as to probable cause could possibly arise in the case.

New trial denied.