CHARLES PECUE, Appellant, v. GEORGE H. WEST, Respondent.

**Libel — privileged communications — when statement made by officer of law enforcement society to a district attorney, charging person with a crime but based on unverified information not privileged — what is sufficient evidence of malice in such case.**

1. The rule of absolute privilege does not attach to a complaint made or information given to a district attorney of an alleged crime.

2. Such a communication is subject, however, to the rule of qualified privilege. To justify a recovery in an action for libel based upon it the plaintiff must establish that it was made maliciously and without probable cause.

3. Malice here means not merely personal ill will. It may mean a wanton and reckless disregard of the rights of another.

4. Malice of this kind may be inferred by a jury in the case of a communication made to a district attorney where the charge is false; where it is made as of personal knowledge and where its sole basis is a statement received from an unknown correspondent as to information received by her from some unknown source.

*Pecue* v. *West*, 191 App. Div. 620, reversed.

(Argued March 24, 1922; decided April 25, 1922.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 7, 1920, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

*Milford D. Whedon* for appellant. The publication, as a matter. of law, was not privileged. (*Allen* v. *Crowfoot,* 2 Wend. 513; *Lathrop* v. *Hyde,* 25 Wend. 447; *Smith* v. *Hodgeskins,* Cro. Car. 276; *Dancaster* v. *Hewson,* 2 M. & R. 176; *Smith* v. *Kerr,* 1 Barb. 155.) Neither was the communication qualifiedly privileged. (*Byam* v. *Collins,* 111 N. Y. 151; *Rose* v. *Imperial Engine Co.,* 110 App. Div. 439; *Burkhardt* v. *Press Pub. Co.,* 130 App. Div. 25.) If the communication was privileged, that privilege was overcome by the evidence of malice. (*Turton* v. *N. Y. Recorder Co.,* 144 N. Y. 144; *Shanks* v. *Stump,* 23 Misc. Rep. 264; *Ashcroft* v. *Hammond,* 197 N. Y. 496; *Payne* v. *Rouss,* 46 App. Div. 315.) The question of malice should have been submitted to the jury. (*Byam* v. *Collins,* 111 N. Y. 151; *Hamilton* v. *Eno,* 81 N. Y. 122; *Rose* v. *Imperial Engine Co.,* 110 App. Div. 437; *Grant* v. *Herald Co.,* 93 N. Y. S. R. 85; *Klinck* v. *Colby,* 46 N. Y. 431; *Cohalan* v. *N. Y. Press Co.,* 212 N. Y. 347; *Butler* v. *Gazette,* 119 App. Div. 773; *Payne* v. *Rouss,* 46 App. Div. 315; *Grinnell* v. *Weston,* 95 App. Div. 468; *Saunders* v. *Post Standard Co.,* 107 App. Div. 89.)

*Benjamin P. Wheat* and *E. Raymond Shepard* for respondent. The communication complained of is absolutely privileged. (*Vogel* v. *Grauz,* 110 U. S. 311; *Matter of Quarles & Butler,* 158 U. S. 532; *Gabriel* v. *McMullin,* 127 Iowa, 426; *Schultz* v. *Strauss,* 127 Wis. 325; *Shinglamyer* v. *Wright,* 124 Mich. 230; *Worthington* v. *Scribner,* 109 Mass. 488; *Thorn* v. *Blanchard,* 5 Johns. 508; *Andrews* v. *Gardiner,* 224 N. Y. 446.) The communication was at

least qualifiedly privileged and the burden is upon the plaintiff to prove that it was made by the defendant in bad faith and with express malice. (*Lewis* v. *Chapman,* 16 N. Y. 369; *Van Wyck* v. *Aspinwall,* 17 N. Y. 190; *Klinck* v. *Colby,* 46 N. Y. 427; *Hamilton* v. *Eno,* 81 N. Y. 116, 124; *Byam* v. *Collins,* 111 N. Y. 143; *Hemmens* v. *Nelson,* 138 N. Y. 517, 523; *Ashcroft* v. *Hammond,* 197 N. Y. 488; *Bingham* v. *Gaynor,* 203 N. Y. 27; *.Decker* v. *Gaylord,* 35 Hun, 584; *Coloney* v. *Farrow,* 5 App. Div. 607; *McCarty* v. *Lambley,* 20 App. Div. 264.) Considering the case as one of qualified privilege, there was no evidence of bad faith or malice to submit to the jury; hence the nonsuit was proper. (*Decker* v. *Gaylord,* 35 Hun, 584; *Walker* v. *Best,* 107 App. Div. 304; *Hovey* v. *Rubber Tip Pencil Co.,* 57 N. Y. 119; *Lovell Co.* v. *Houghton,* 116 N. Y. 520; *Hemmens* v. *Nelson,* 138 N. Y. 517; *Ashcroft* v. *Hammond,* 197 N. Y. 488; *Haft* v. *First Nat. Bank,* 19 App. Div. 423.)

ANDREWS, J. During 1918 George H. West was superintendent of the law and order department of the New York Civic League. It seems to have been his duty when he received information as to vice and immorality in a community to convey it to the authorities and ask them to look into the matter. Charles Pecue had a saloon in Granville until September thirtieth, when his license expired. He then moved to a small building in the same town, which had formerly been a saloon, and used it as a restaurant and poolroom. He was a married man with children, and he and his family lived in a house next door. West had not been in Granville for three or four years and seems to have had no personal knowledge of conditions there. He was not acquainted with Pecue. Late in October he received a letter from a Mrs. Collins, so far as appears, an entire stranger to him, stating that " a Mr. Pecue, who kept a saloon near the railroad crossing, has been and is keeping a disorderly

house." A few days later a second letter reached him from the same Mrs. Collins. Again it contained charges against Pecue. " The following information is received. * * * Charles Pecue, Potter Avenue, who kept a saloon, is keeping girls for immoral purposes. One was taken to the hospital sick and another taken into the hospital off the street." There was this much basis for this gossip. A servant, employed in the Pecue residence, went to the hospital at her brother's request, suffering from an attack of influenza. Otherwise it was wholly false. Nevertheless, although the second letter did not even purport to be based upon what Mrs. Collins herself knew, without making the slightest investigation; without stating that he was acting on information which he had not verified or attempted to verify; speaking as of his own personal knowledge, West wrote and sent to the district attorney of Washington county a letter containing: " Charles Pecue, Potter Avenue, formerly proprietor of a saloon, has been and is keeping girls for immoral purposes. One was taken to the hospital sick and another taken to the hospital off the street. The place is in Granville, Washington County, New York."

This action was brought to recover damages for libel. At the close of the trial a nonsuit was granted on the ground that the communication so made was privileged and the plaintiff had failed to show the necessary malice on the part of the defendant. This result was affirmed in the Appellate Division by a divided court. It is now said that not only was the theory of the trial judge right, but that he should have gone further. He should have held that under the circumstances the letter was absolutely privileged, and that malice in making the charge was immaterial.

Doubtless there are cases where a false charge may be safely made, no matter how great the personal malice of the writer. They are few. One, however, relates to words published in the course of judicial proceedings.

As to such words there often exists an absolute privilege founded on the supposed requirements of public policy. But while the principle is generally recognized, its application is frequently in doubt. Courts differ as to what constitutes a judicial proceeding within the rule. Is a complaint made or information given to a district attorney of an alleged crime within its compass? Some courts, believing that the general interest requires the utmost freedom in such matters, have held that it is. (*Matter of Quarles and Butler,* 158 U. S. 532; *Vogel* v. *Gruaz,* 110 U. S. 311; *Schultz* v. *Strauss,* 127 Wis. 325; *Wells* v. *Toogood,* 165 Mich. 677; *Oliver* v. *Pate,* 43 Ind. 132; *Gabriel* v. *McMullin,* 127 Iowa, 426.) Others seem doubtful. (*McDavitt* v. *Boyer,* 169 Ill. 475, 483, 485; *Chapman* v. *Battle,* 124 Ga. 574.) Elsewhere, while the cases cited do not always definitely determine the question, the inclination seems to be to decide that under such circumstances the privilege is not absolute, but qualified. (*Flanagan* v. *McLane,* 87 Conn. 220; *Robinson* v. *Van Auken,* 190 Mass. 161; *Bunton* v. *Worley,* 4 Bibb [Ky.], 38; *Brinsfield* v. *Howeth,* 107 Md. 278; *Hancock* v. *Blackwell,* 139 Mo. 440; *Miller* v. *Nuckolls,* 77 Ark. 64; *Pierce* v. *Oard,* 23 Neb. 828; *Marshall* v. *Gunter,* 6 Richard. L. [S. C.] 419; *Briggs* v. *Byrd,* 34 N. C. 377; *Sands* v. *Robison,* 12 Smedes & M. [Miss.] 704.)

In New York we find no controlling authority. In *Hastings* v. *Lusk* (22 Wend. 410, 417) Chancellor WALWORTH, speaking of absolute privilege, says it extends to complaints made to grand juries and magistrates, charging persons with crime. Here no action for slander will lie " although express malice as well as the absolute falsity of the charge can be established by proof." In these cases, however, a proceeding in court is in progress or is about to be initiated. In *Thorn* v. *Blanchard* (5 Johns. 508) the majority of the Court of Errors thought the same rule applicable to complaints made to the Council of Appointment to obtain the removal of a

district attorney. On the other hand, only qualified privilege attached to charges made against a customs officer to the secretary of the treasury in whom was vested the right of removal (*Howard* v. *Thompson*, 21 Wend. 319); or to a bishop having power to examine and redress grievances (*O'Donaghue* v. *M'Govern*, 23 Wend. 26); or to a constable asked to serve a process (*Lathrop* v. *Hyde*, 25 Wend. 448); or to a police officer (*Smith* v. *Kerr*, Edm. Sel. Cas. 190; affd., 1 Barb. 155); or to the governor on an application for a pardon (*Andrews* v. *Gardiner*, 224 N. Y. 440). A dictum of Judge FOLGER appears in *Klinck* v. *Colby* (46 N. Y. 427, 434) that " for the sake of public justice, charges and communications, which would otherwise be slanderous, are protected if made *bona fide* in the prosecution of an inquiry into a suspected crime." A statement not dissimilar in effect is found in *Thorn* v. *Moser* (1 Den. 488).

But while no authority controls us, the tendency of our courts is to restrict the rule of absolute privilege rather than to extend it. As has been pointed out, the English rule of complete immunity to counsel and witnesses in proceedings in court, with us is limited to these matters relevant to the proceedings in which they are engaged. We have said impliedly that the rule applies only to a proceeding in court or one before an officer having attributes similar to a court. It is not applied " to proceedings which, though official and public, are not in substance judicial," and it is " the tendency of courts to restrict the scope of absolute privilege in libel." (*Andrews* v. *Gardiner, supra.*)

In our opinion it should not be held that the rule of absolute privilege is applicable to the circumstances before us. It extends the rule beyond that of any case except possibly *Thorn* v. *Blanchard*, the authority of which has been questioned. The complaint to the district attorney is not a judicial proceeding. In receiving it he has no

attributes similar to a court. It is his duty to investigate where crime is or where it may have been committed. But such was the duty of the police officer in *Smith* v. *Kerr*. Nor do we think that any rule of public policy requires a different conclusion. It may be that the words " actual malice " have a peculiar meaning in this connection. It may be, as Judge Cowen said, that whatever the actual ill-will, there can be no recovery if the complainant had reasonable ground to believe his charge was well founded. At least, as so limited, the public interest is not likely to suffer because proper complaints are checked by fear. And it is to the general advantage that the time of public officials should not be wasted in the investigation of false charges, made maliciously and without any probable ground to believe them true.

While not a case of absolute privilege, undoubtedly a qualified privilege attaches to information as to actual or suspected crime given by the citizen to a district attorney. (*Klinck* v. *Colby*, 46 N. Y. 427.) If so, one claiming to be injured must show that the reporter was actuated by malice. If no evidence be given warranting such a conclusion, the complaint should be dismissed. (*Ashcroft* v. *Hammond*, 197 N. Y. 488.) Malice, however, does not mean alone personal ill-\ ll. It may also mean such a wanton and reckless disregard of the rights of another as is ill-will's equivalent. This means more than mere negligence or want of sound judgment. (*Hesketh* v. *Brindle*, 4 Times L. R. 199.) It means more than hasty or mistaken action. (*Hemmens* v. *Nelson*, 138 N. Y. 517.), If the defendant made the statements in good faith, believing them to be true, he will be protected, even if a man of wider reasoning powers or greater skill in sifting evidence would have hesitated. (*Clark* v. *Molyneux*, 3 Q. B. Div. 237.) So if he fairly and in good faith relies on hearsay (*Lister* v. *Perryman*, L. R. 4 H. L. 538), which often may reasonably induce action or belief.

If, however, the defendant knows the statement he makes is false, we need go no further. Again rumor may be so tenuous that the trier of fact might well decide that the statement of the defendant as to his belief in it and as to his good faith is discredited. Especially so if he reports it not as a rumor but as a statement of fact for which he vouches. " Mere reckless statements, or statements based on nothing in the way of information, are not protected." (*Joseph* v. *Baars,* 142 Wis. 390.) Nor are statements made " with knowledge that they were untrue, or without caring whether they are true or false " (*Clark* v. *Molyneux,* 3 Q. B. Div. 237); or if one states " as true what he did not know to be true, recklessly, not taking the trouble to ascertain whether it was true or not and did this by reason of his objection " to certain places of amusement. (*Royal Aquarium* v. *Parkinson,* [1892] 1 Q. B. 431, 455.)

Is there any evidence from which a jury might infer such malice in the case before us? We think that there is. It is true the defendant says he had never met or heard of the plaintiff and bore him no personal ill-will. Doubtless this is so. But if the jury might fairly reach the conclusion that under the circumstances his action was reckless and wanton; that he made a false charge, not caring whether it was true or false; that he was guilty of more than mere negligence or bad judgment; that he did not act in good faith or because he in fact believed the plaintiff was guilty of the charges brought against him; then the complaint should not have been dismissed. We are not dealing with a case where a citizen transmits to a district attorney for his investigation information, suspicions, rumors, gossip, for what they are worth. Malice could not be inferred from such an act, nor would it evince bad faith or recklessness. We confine our decisions to the precise facts before us — to a false charge, made as of personal knowledge, based solely upon a statement from an unknown correspondent as to

information which she had received from some unknown source. Under such circumstances, malice, as we define the word, may be inferred.

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

POUND, J. (dissenting). On plaintiff's case, it appears that defendant communicated the information he had received of an alleged crime to the district attorney in good faith, without personal ill-will, malicious or guilty motive. The burden is not on defendant to show that he had reasonable grounds for making the charge. The burden is on plaintiff to prove actual malice. The contrary appears. " This kind of malice which overcomes and destroys the privilege *is of course quite distinct from that which the law, in the first instance, imputes with respect to every defamatory charge, irrespective of motive.* It has been defined to be an ' indirect and wicked motive which induces the defendant to defame the plaintiff.' Unless we can find in the record in this case some proof which would warrant the jury in finding the existence of such wicked motive, on the part of the defendant, when he made the charge in question, then the direction of the learned trial judge was correct and the judgment must stand. The question is not whether the charge is true or false, nor whether the defendant had sufficient cause to believe that the plaintiff sent the letter, or acted hastily, or in a mistake, but the question is, the occasion being privileged, whether there is evidence for the jury that he knew or believed it to be false. The plaintiff may have arrived at conclusions without sufficient evidence, but the privilege protects him from liability on that ground until the plaintiff has overcome the presumption of good faith by proof of a malicious purpose to defame her character, under cover of the privilege. The plaintiff must be able to point to some evidence in the record that would warrant the jury in imputing this

guilty motive to the defendant before her appeal can be sustained. As malice was an essential element of her case, not to be implied from the charge itself, but quite the contrary from the occasion on which it was made, the burden of establishing that fact was upon her. The record discloses no motive whatever on the part of the defendant for any charge against the plaintiff which he knew to be false, or did not believe to be true." (*Hemmens* v. *Nelson*, 138 N. Y. 517, 523, 524; *Joseph* v. *Baars*, 142 Wis. 390.)

" Evidence of malice. The judge must decide whether the occasion is or is not privileged, and also whether such privilege is absolute or qualified. If he decide that the occasion was one of absolute privilege, the defendant is entitled to judgment, however maliciously and treacherously he may have acted. If, however, the privilege was only qualified, the *onus* lies on the plaintiff of proving actual malice. This he may do either by *extrinsic* evidence of personal ill-feeling, or by *intrinsic* evidence, such as the exaggerated language of the libel, the mode and extent of publication, and other matters in excess of the privilege." (Odgers on Libel & Slander [5th ed.], 685.) The rule laid down in the prevailing opinion is properly applied only to cases of reckless statements based on nothing in the way of information. The nonsuit was proper.

The judgment should be affirmed, with costs.

HISCOCK, Ch. J., HOGAN and CARDOZO, JJ., concur with ANDREWS, J.; POUND, J., reads dissenting opinion, in which MCLAUGHLIN and CRANE, JJ., concur.

Judgments reversed, etc.