Jones, J.
I agree that the publication by Dr. Corey of the defamatory letter to the faculty evaluation committee is not entitled to the shelter of an absolute privilege. What I perceive as a deficiency in Judge Fuchsberg’s opinion, however, impels me to write this concurrence. Although that opinion now takes note of the special treatment the law accords publication of defamatory rumor, I still regard its analysis and application of this aspect of the qualified or conditional privilege—a privilege to which all concede this publication was entitled at a minimum—as insufficient in its development and incorrect in its focus.
"[T]here are occasions on which it may be entirely proper to give information of a rumor or a mere suspicion, as such, without any belief or any reason to believe that it represents the truth.” (Prosser, Torts [4th ed], § 115, pp 795-796.) Section 602 of the Restatement Second of the Law of Torts is squarely in point:
"Publication of Defamatory Rumor
"One who upon an occasion giving rise to a conditional privilege publishes a defamatory rumor or suspicion concerning another does not abuse the privilege, even if he knows or believes the rumor or suspicion to be false, if
"(a) he states the defamatory matter as rumor or suspicion and not as fact, and
"(b) the relation of the parties, the importance of the interests affected and the harm likely to be done make the publication reasonable.”
In my analysis this case should be remitted for proof as to whether Dr. Corey brought the defamatory letter to the attention of the evaluation committee for the purpose of advancing the interests of that committee in reaching its determination, and whether in so informing the committee he *284 reported the contents of the letter to it only as rumor and suspicion (rather than fact) which would be relevant to its deliberations. If such be the proof, that will end the matter in judgment for the State. If, on the contrary, the proof shows that the report was not made for the benefit of the committee or that Dr. Corey reported the contents of the letter as fact rather than rumor, it will then be appropriate to proceed to the inquiry contemplated by Judge Fuchsberg, i.e., whether the publication was made with malice. It is the characterization that Dr. Corey gave his communication to the committee, not whether the letter turns out to have been cast in terms of rumor or suspicion rather than of fact, which will be determinative.
The law with respect to publication of defamatory rumor was anticipated in this State at least as early as 1922 when our court in Pecue v West (233 NY 316, 323) recognized that different consequences would attach to a publication if the author "reports it not as a rumor but as a statement of fact for which he vouches”, and pointedly noted there that "[w]e are not dealing with a case where a citizen transmits to a district attorney for his investigation information, suspicions, rumors, gossip, for what they are worth”, adding "[mjalice could not be inferred from such an act, nor would it evince bad faith or recklessness.” (Cf. Doane v Grew, 220 Mass 171.)
It makes great common sense that there should be no liability in circumstances in which there is a qualified or conditional privilege, if the publisher reports the defamatory matter to advance the legitimate interests of the recipient and he states it only for what it is—rumor or suspicion and not fact. The present case admirably illustrates this principle. The faculty evaluation committee was charged with responsibility to pass on Dr. Stukuls’ qualifications for tenure. The legitimate interests of that committee dictated that its members be informed of all available relevant information, certainly including that in the Dr. Stukuls file. It is not disputed that the letter which Dr. Corey brought to the committee’s attention came from the president’s file on Dr. Stukuls. It appears that Dr. Corey may be said to have been invited, by reasonable implication if not expressly, to furnish the committee with data relevant to its deliberations. In his position this would have been natural if not mandatory. It may even be asserted that, having knowledge of the existence of the defamatory letter in the president’s file, Dr. Corey was under a profes *285 sional obligation to see to it that the letter came to the attention of the committee—not as an accurate and true statement of fact as to what was charged in the letter, but as a rumored report with respect to the truth of which Dr. Corey had no knowledge and made no representations. Other situations can readily be visualized in which the legitimate interests of the recipients and the relation to them of the publisher would make failure to report known rumors an undoubted dereliction of duty. In such instances it would be irrational to predicate liability on an assertion that the publisher knew of the falsity of the publication or that he acted in reckless disregard of its truth or falsity, i.e., the concept traditionally labeled "malice” in the law of defamation (cf. Restatement, Torts 2d, § 600). Indeed, any such inquiry would be irrelevant; the qualified or conditional privilege itself extends in the circumstances to publication of what is stated by the publisher to be rumor or suspicion, even though known by him to be wholly without foundation.
That this rule should be applied to cases like the present may be otherwise demonstrated. Assume the defamed teacher later were to make a sexual assault on a student and in consequence a claim or action were instituted against the educational institution. It takes no imagination to visualize the relish with which the claimant’s attorney would view proof that for some reason a letter charging similar prior sexual misbehavior, known to have been in the files, was kept from the committee whose recommendation led to retention of the teacher on the faculty.
On the other hand, if the proof shows that Dr. Corey did not act for the purpose of advancing the legitimate interests of the evaluation committee, but made the report to the committee solely from spite or ill will against Dr. Stukuls, there would be an abuse of the qualified or conditional privilege giving rise to liability. If the report to the committee was made for the purpose of advancing the legitimate interests of the committee, however, the fact that the report was inspired in part by resentment or indignation at Dr. Stukuls’ rumored misbehavior would not constitute an abuse of the privilege. (Restatement, Torts 2d, § 603, Comment a; see § 605.)
In sum it is my view that, irrespective of the presence or absence of the traditional element of "malice” or of ill will, the qualified or conditional privilege which attached to Dr. Corey’s communications with the faculty committee would not *286 have been abused and the State would not be liable if the letter about Dr. Stukuls was presented to the faculty committee for its benefit and was identified as rumor or suspicion only, with no vouching on his part, directly or indirectly, that its contents were true.
I agree with Judge Fuchsberg that it was error at the Appellate Division to have affirmed the dismissal of the claim on the ground of absolute privilege. I would, therefore, reinstate the claim and remit the case to the Court of Claims for consideration and disposition of claimant’s motion for discovery and for other appropriate proceedings.