OPINION OF THE COURT
Jasen, J.
The principal issue before us is whether allegedly defamatory oral statements made by the defendant to a District Attorney concerning the possible commission of a crime by the plaintiff, as well as statements made in an affidavit submitted to the District Attorney by the defendant in lieu of an appearance before the Grand Jury are, in an action for libel and slander, protected by an absolute or a qualified privilege.
Plaintiff Toker is an Assistant Corporation Counsel of the City of New York, a position which he has held since 1954. In 1961, defendant Stern’s mother suffered a broken wrist as a result of a fall which occurred on a New York City sidewalk. At the time of the injury, Stern, an attorney, was confidential secretary to a Justice of the Supreme Court, New York County — a position which prohibited him from representing his mother in her personal injury action against the city. He, therefore, retained defendant Poliak, a personal friend, to pursue his mother’s claim. Plaintiff Toker, as Assistant Corporation Counsel representing the city, settled the action in 1963. At that time, Stern alleges Poliak informed him that he had paid Toker a sum of money to settle the claim. Upon learning of this information, Stern took no action to report the purported bribe.
In the spring of 1972, however, Toker became a candidate in the Democratic primary for Judge of the Civil Court for the Municipal Court District in lower Manhattan. Stern, then First Deputy Commissioner in the Department of Consumer Affairs of the City of New York, informed Victor A. Kovner, a member of the Mayor’s Committee on the Judiciary (Mayor’s Committee), of the purported bribe involving Toker. It is Stern’s contention that he informed Kovner that the information he was relating was based upon hearsay rather than personal or direct knowledge; Stern never appeared before the Mayor’s Committee, however, because Kovner advised Stern that the Mayor’s Committee had jurisdiction solely over appointive judicial offices. As chance would have it, Toker was unsuccessful in his election bid.
Subsequently, in January of 1974, Toker’s name was submit *217 ted by Mayor Beame to the Mayor’s Committee for a review of his qualifications for appointment to the Criminal Court of the City of New York. At the end of January or beginning of February, Stern received a telephone call from Kovner requesting Stern to reaffirm the information he related to Kovner in 1972 concerning Toker’s involvement in the alleged bribe. At this time, Stern was also informed by Kovner that the Mayor’s Committee had decided to refer this matter to the Department of Investigation of the City of New York. When asked by Kovner whether he would respond to inquiries by the Department of Investigation, Stern contends that he responded affirmatively, but again cautioned that he had no direct or personal knowledge of Toker’s participation in the bribe.
Shortly thereafter, Stern received a telephone call from Nicholas Scoppetta, Commissioner of the Department of Investigation, requesting Stern to meet with him to discuss the Toker incident. Stern complied with this request, but once again disclaimed personal knowledge of the bribery. The matter was then referred by the Department of Investigation to the District Attorney of New York County.
In June of 1974, Stern appeared at the office of the District Attorney, upon the latter’s request, and was informed by the Assistant District Attorney that an investigation had been commenced and that unless he responded to the questions posed, he would be subpoenaed to appear before the Grand Jury. The Assistant District Attorney also requested that Stern submit an affidavit summarizing his testimony in lieu of Grand Jury testimony. He was instructed that absent submission of an affidavit, he would be subpoenaed to appear before the Grand Jury. After again cautioning as to his lack of personal knowledge, Stern submitted the affidavit on June 27, 1974. Finding that there existed no legal evidence of wrongdoing on the part of Toker, the District Attorney concluded that presentment to the Grand Jury was unnecessary.
Plaintiff Toker commenced this action on December 12, 1974, alleging causes of action in libel and slander against both Poliak and Stern. Both defendants moved for summary judgment on each cause of action. Special Term granted Poliak’s cross motion for summary judgment on the libel cause of action, holding that Toker failed to establish any writing or publication by Poliak within the one-year Statute of Limitations. (CPLR 215.) As to the cause of action against *218 Poliak for slander, Special Term denied Poliak’s cross motion for summary judgment, "without prejudice to renewal upon the completion of Stern’s examination before trial”. With respect to Stern’s motion for summary judgment, Special Term denied it as to each cause of action. It was the court’s opinion that the affidavit upon which the libel cause of action was based was a qualifiedly privileged communication. Although Stern argued that Toker had failed to establish evidentiary facts from which malice could be inferred, Special Term concluded otherwise.
On appeal, taken by Stern, the Appellate Division modified the order of Special Term, holding that the cause of action against Stern for libel should have been dismissed. The court reasoned that the affidavit submitted by Stern to the District Attorney in lieu of testimony before the Grand Jury was an absolutely privileged communication. The Appellate Division agreed, however, with Special Term’s denial of Stern’s motion for summary judgment on the slander cause of action. Although the court believed it arguable that Stern did not repeat his statement to the Mayor’s Committee within the Statute of Limitations and that the oral statements to the District Attorney were absolutely privileged as the affidavit was, it concluded that the oral statements to the Department of Investigation were only qualifiedly privileged.
On these cross appeals, Stern, arguing that all of the communications he made were absolutely privileged, seeks a reversal of the lower court’s denial of his motion for summary judgment on the slander cause of action. Toker seeks reversal of the Appellate Division’s grant of Stern’s motion for summary judgment on the libel cause of action, arguing that none of Stern’s communications, including the affidavit submitted to the District Attorney, were absolutely privileged.
We hold that both the oral statements made by Stern to the District Attorney and the affidavit submitted upon the latter’s request should be afforded a qualified privilege. Similarly, we hold that Stern’s statements to the Department of Investigation should also be afforded a qualified privilege.
Public policy mandates that certain communications, although defamatory, cannot serve as the basis for the imposition of liability in a defamation action. (Shenkman v O’Malley, 2 AD2d 567, 572; Restatement, Torts [2d], § 584 et seq.; Prosser, Torts [4th ed], § 114; 35 NY Jur, Libel and Slander, § 91.) Communications falling within this category are deemed *219 privileged, either absolutely or qualifiedly. Shenkman v O'Malley, supra; 35 NY Jur, Libel and Slander, § 91.)
Communications afforded an absolute privilege are perhaps more appropriately thought of as cloaked with an immunity, rather than a privilege against the imposition of liability in a defamation action. (Prosser, Torts [4th ed], § 114, n 66.) This immunity, which protects communications irrespective of the communicant’s motives, has been stringently applied. In general, its protective shield has been granted only to those individuals participating in a public function, such as judicial (Pecue v West, 233 NY 316), legislative (Roberts v Pratt, 174 Misc 585), or executive proceedings (Cheatum v Wehle, 5 NY2d 585). The absolute protection afforded such individuals is designed to ensure that their own personal interests — especially fear of a civil action, whether successful or otherwise— do not have an adverse impact upon the discharge of their public function. (Restatement, Torts [2d], § 584 et seq.)
 In contrast, communications protected by a qualified privilege do not provide the communicant with an immunity against the imposition of liability in a defamation action. A qualified privilege does, however, negate any presumption of implied malice flowing from a defamatory statement, and places the burden of proof on this issue upon the plaintiff. (Lovell Co. v Houghton, 116 NY 520, 525; Doyle v Clauss, 190 App Div 838, 842.) A communication is said to be qualifiedly privileged where it "is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned.” (Lovell Co. v Houghton, 116 NY, at p 526, supra.) The interest championed by the communicant, viewed as constituting a somewhat lesser degree of importance than those interests vindicated in communications afforded absolute immunity, must be expressed "in a reasonable manner and for a proper purpose.” (Prosser, Torts [4th ed], § 115, p 786.)
 Critical to the determination of the present case is the scope of judicial proceedings to which absolute immunity attaches. In this regard, we stated on a previous occasion that absolute immunity "applies only to a proceeding in court or one before an officer having attributes similar to a court.” (Pecue v West, 233 NY, at p 321, supra.) There is little doubt that a Grand Jury investigation constitutes a judicial proceeding within the contemplation of this definition. (Hastings v Lusk, 22 Wend 410, 417.) Thus, witnesses testifying before a *220 Grand Jury are protected by an absolute immunity. (Restatement, Torts [2d], § 589, Comment f.)
Far removed from a judicial proceeding, however, is a communication made by an individual to a law enforcement officer such as a policeman. The majority of States afford a communication of this nature a qualified privilege, rather than absolute immunity. (See, e.g., Bergman v Hupy, 64 Wis 2d 747; Davenport v Armstead, 255 SW2d 132 [Mo]; Sylvester v D'Ambra, 73 RI 203; Hutchinson v New England Tel. & Tel. Co., 350 Mass 188; Hardway v Sherman Enterprises, 133 Ga App 181, cert den 421 US 1003; Lisowski v Chenenoff, 37 Wis 2d 610; but see Matter of Quarles & Butler, 158 US 532 [communication absolutely privileged].) While every citizen has a duty to report criminal activity to the proper authorities, a policeman is not a judicial officer.
Falling between these extremes is the present case: a communication to a prosecuting attorney. As to the scope of the privilege attaching to these communications, there exists considerable disagreement. (Compare Getchell v Auto Bar Systems Northwest, 73 Wn 2d 831; Jolly v Valley Pub. Co., 63 Wn 2d 537; Cashen v Spann, 125 NJ Super 386, mod 66 NJ 541, cert den 423 US 829 [communication qualifiedly privileged], with Vogel v Gruaz, 110 US 311; Borg v Boas, 231 F2d 788; Bergman v Hupy, 64 Wis 2d 747, supra; Gabriel v McMullin, 127 Iowa 426 [communication absolutely privileged]; see, generally, Defamation — Communication to Police, Ann., 140 ALR 1466, 1474; 50 Am Jur 2d, Libel and Slander, § 214.)
In Pecue v West (233 NY 316, supra), we held that absolute immunity does not attach to a complaint or information given to a District Attorney concerning the alleged commission of a crime. We reaffirm that holding today. As we observed then, the communication of a complaint, without more, to a District Attorney does not constitute or institute a judicial proceeding. Hence, no one would dispute that at this point a District Attorney receiving such information does not act as a judicial or quasi-judicial officer. At this juncture his function is more analogous to that of the police officer than that of the Judge. (Pecue v West, 233 NY, at pp 321-322, supra; see Matter of B. T. Prods. v Barr, 44 NY2d 226 [decided herewith].)
Stern contends, however, tht his communications to the District Attorney should be afforded absolute immunity because they were given on pain of a threatened subpoena to *221 appear before the Grand Jury. He argues that since he would have been afforded absolute immunity had he testified before the Grand Jury, his affidavit submitted in lieu thereof, as well as his oral statements to the District Attorney, should similarly be afforded absolute immunity. We disagree.
Testimony before a Grand Jury is afforded absolute immunity because, by statute (CPL 190.25, subd 4), Grand Jury proceedings are secret. Disclosure of the nature and substance of testimony elicited before this body is prohibited. No such statutory directive requiring confidentiality exists with respect to communications made to a District Attorney.
 Moreover, as a matter of policy, there is little reason to clothe communications to a District Attorney prior to commencement of a criminal proceeding with absolute immunity. A qualified privilege is sufficient to foster the public purpose of encouraging citizens to come forth with information concerning criminal activity. If the information is given in good faith by an individual who believes the information to be true, he is protected against the imposition of liability in a defamation action, notwithstanding that another, perhaps possessed of greater wisdom, would not have reported the information. (Pecue v West, 233 NY, at p 322, supra.) The protection afforded by a qualified privilege should not be cavalierly dismissed as inadequate. On the contrary, while not providing an absolute cloak of protection, a qualified privilege does provide an atmosphere in which a civic-minded citizen may, without fear, convey information which he believes the disclosure of which will redound to the benefit of the public. Only those who act out of malice, rather than public interest, need hesitate before speaking. It is in these latter instances that "[p]roof of such indirect motive will defeat the privilege which would otherwise have attached, for it is not to the convenience and welfare of society that false and injurious communications as to the reputation of others should be made, not for the furtherance of some good object, but for the gratification of an evil and malicious disposition or for any other object than that which gave rise to the privilege.” (Gatley, Libel and Slander [3d ed], p 216.) In our view, to shield communications made to the District Attorney concerning alleged criminal activity with an absolute immunity is unnecessary. Public policy is aptly served by application of a qualified privilege.
Turning to Stern’s communications with the Depart- *222 merit of Investigation, we agree with the Appellate Division’s holding that these communications should be afforded a qualified privilege. Stern maintains, however, that they are absolutely immune on the ground that the Department of Investigation is a quasi-judicial, as opposed to an administrative, body.
Absolute immunity has been afforded to communications made in the course of such proceedings as the filing of a claim before a Workmen’s Compensation Board (Lipton v Friedman, 2 Misc 2d 165), the filing of a complaint before a grievance committee of a Bar Association (Wiener v Weintraub, 22 NY2d 330) and the filing of a complaint before an agency licensing real estate brokers in connection with a license revocation proceeding (Julien J. Studley, Inc. v Lefrak, 50 AD2d 162, affd insofar as appealed from 41 NY2d 881). In each of these proceedings, as well as others held to be quasi-judicial (see, generally, Defamation — Administrative Proceeding, Ann., 45 ALR2d 1296; 50 Am Jur 2d, Libel and Slander, § 234), the administrative body exercised a quasi-judicial function. A hearing was held at which both parties were entitled to participate. The administrative body was empowered, based upon its findings, to take remedial action, whether it be an award of compensation, disbarment, or revocation of a license. In contrast, in the present case, although the Department of Investigation does have the power to subpoena witnesses, no quasi-judicial hearing at which plaintiff Toker was permitted to challenge defendant Stern’s allegations was ever held. Nor does it appear that the Department of Investigation was empowered, based upon its findings, to grant any tangible form of relief reviewable on appeal in the courts. In sum, the proceeding before the Department of Investigation lacked all of the safeguards traditionally associated with a quasi-judicial proceeding. (See Bradley v Hartford Acc. & Ind. Co., 30 Cal App 3d 818; McAfee v Feller, 452 SW2d 56 [Tex].)
To clothe with absolute immunity communications made to a body acting in other than a quasi-judicial capacity — communications which because of the absence of a hearing may often go unheard of, let alone challenged, by their subject — would provide an unchecked vehicle for silent but effective character assassination. While we agree that it is of the utmost importance to select as members of our judiciary persons of unquestioned integrity and ability, a balance must be struck between this objective and the right of an individual to defend himself *223 against attacks upon his character. We believe that the application of a qualified privilege provides the necessary balance by fostering disclosure of information of public import other than that conveyed maliciously.
Finally, although the Appellate Division did not discuss the scope of the privilege attaching to Stern’s communications with the Mayor’s Committee because of their belief that any cause of action premised upon these communications was arguably untimely, we would add that for the same reasons expressed with respect to the Department of Investigation, these communications, should they come within the Statute of Limitations, are entitled to the protection afforded by a qualified privilege.
For the reasons stated, on defendant’s appeal, the order of the Appellate Division should be affirmed, without costs, and the certified question, insofar as applicable to defendant’s appeal, answered in the affirmative. On plaintiff’s cross appeal, the order should be reversed, without costs, and the first cause of action reinstated.