Chief Judge Fuld.
We granted leave to appeal in this case in order to consider the reach of the defense of qualified privilege in a defamation action.
The plaintiff, E. Clark Stillman, is the former president of the Belgian American Educational Foundation and the various questions raised herein, involving causes of action for libel, slander and malicious interference with a contract, all arise out of a dispute within the Foundation culminating in the plaintiff’s forced resignation in June of 1963.
The Foundation is the successor organization to the Commission for Belief in Belgium which was formed shortly before the United States’ entry into World War I by former President Herbert Hoover. After the war, the assets of the Commission were placed in a fund to be used for the purpose of providing scholarships for Belgians who wished to engage in studies in the United States. The operation had been highly successful but, by 1962, operating expenses had risen to the extent that they were consuming half of the Foundation’s income. In that year, at the instance of Mr. Hoover, a Special Committee was appointed to seek a solution to the problem. The Special Committee prepared a draft report recommending that the Foundation’s assets be liquidated; that approximately half of them be transferred to a related institution in Belgium — the Fondation Universitaire —which could perform similar functions at greatly reduced cost; and that most of the remaining assets be donated to institutions associated with the Hoover family as a tribute to the organization’s founder.
Although the plan was apparently favored by a majority of the Executive Committee, the Foundation’s governing body, it was strenuously opposed by its two senior employees, the plaintiff Stillman and Perrin C. Galpin. In order to prevent the adoption of the Special Committee’s proposals, they decided to solicit proxies directly from the Foundation’s members, particularly those in Belgium, who had strong emotional ties to the institution. As a result of their efforts, there was considerable criticism of those proposals in Belgium, and the Executive Committee, feeling its control threatened, sent W. Hallam Tuck to that country to explain its position to leading members of the Foundation residing there. During his conversations with them, Tuck accused the plaintiff and Galpin of falsely representing *52 the plans of the Committee and of casting aspersions on the motives of former President Hoover and his family.[1]
The dispute reached its climax at the meeting of the members of the Foundation held on March 19, 1963. Although the group headed by Mr. Tuck retained control over the Executive Committee, a resolution was adopted requiring approval by the membership before any action could be taken on the recommendations of the Special Committee. The plan for a major reorganization of the Foundation was soon abandoned.
Following the meeting, Mr. Tuck and one of his supporters (Maurice Pate) undertook to convince the Executive Committee to compel the plaintiff’s resignation. They published two allegedly libelous documents, a letter, dated April 20, 1963, stating that the plaintiff was ‘ ‘ largely responsible for spreading misstatements in Belgium concerning the future of the BASF, and in so doing has been disloyal to the Chief [Hoover] ” and a telegram, dated nine days later, accusing the plaintiff of engaging in “ unauthorized communications regarding BASF administrative policy matters which are of the sole competence of BAEF Executive Committee ”. On May 27, 1963, the Executive Committee adopted a resolution demanding the plaintiff’s resignation, and he resigned a few days later.
During the following month, Gralpin also submitted his resignation, and the departure of these two men caused a great deal of concern among their supporters in Belgium. In October of 1963, Jacques Van Der Belen, the senior official of the Foundation in that country, wrote a letter to a Professor Fritz Malschaert in response to - his request for an explanation. It charged the plaintiff, among other things, with spreading “ insinuations * * * attributing to [Herbert Hoover’s son] the intention of having formed this committee with the real thought in mind of dissolving the Foundation and diverting its funds to his personal profit.”
*53 Stillman brought one action against Pate and Tuck for defamation and for malicious interference with the contract[2] and a second, against Van Der Belen and the Foundation, also for defamation. The defendants’ motions for summary judgment dismissing the complaints were granted at Special Term on the ground that the allegedly defamatory statements, made as they were between and among interested parties, were qualifiedly privileged; the Appellate Division unanimously affirmed the resulting determinations and, as already noted, the appeals are here by our permission.
A communication made by one person to another upon a subject in which both have an interest is protected by a qualified privilege. (See Shapiro v. Health Ins. Plan, 7 N Y 2d 56; Ashcroft v. Hammond, 197 N. Y. 488; Byam v. Collins, 111 N. Y. 143; Harrison v. Bush, 5 El. & Bl. [Q.B.] 344 [1855].) The privilege thus granted, as the qualifying term itself indicates, is not absolute; it may be overcome and defeated by a showing based on evidentiary facts that the defamatory statements were motivated by either “ actual malice ” (Shapiro v. Health Ins. Plan, 7 N Y 2d 56, 60, supra), “ actual ill-will ” (Ashcroft v. Hammond, 197 N. Y. 488, 495, supra) or “ personal spite * * * or culpable recklessness or negligence ”. (Hoeppner v. Dunkirk Print. Co., 254 N. Y. 95,106; see, also, Fowles v. Bowen, 30 N. Y. 20, 26.) The plaintiff in the present case insists that he met this burden and, consequently, that summary judgment was improperly granted against him.
We disagree. The parties herein were engaged in a dispute about the policy of an institution in which they all were deeply interested. In defending their respective positions, each faction accused the other of misrepresenting its views in order to win support. Whether or not, in the final analysis, any of these accusations were true or false is hardly relevant. As long as the statements were motivated not by ill will or personal spite but by a sincerely held desire to protect the institution, they are not actionable. The plaintiff has failed to adduce any evidence that the defendants’ statements and actions were motivated by anything other than a belief that an employee who sought to *54 frustrate the decisions of the organization employing him had outlived his usefulness.[3]
We reach the same conclusion with respect to the letter sent by the defendant Van Der Belen to Professor Malschaert even though the latter was not a member of the Foundation and had no direct voice in its administration. The fact is that Malschaert frequently acted on behalf of the Foundation, interviewing prospective exchange students who were candidates to receive the Foundation’s aid, and it was precisely in this capacity that he had made his inquiry. Whether or no Van Der Belen, as the senior officer of the Foundation in Belgium, had any legal duty to respond to Professor Malschaert, it is manifest that he had a moral obligation to do so and that is all that is required to warrant invocation of the qualified privilege. (See Shapiro v. Health Ins. Plan, 7 N Y 2d 56, 60, supra.)
In sum, the record in this case — developed, it should be noted, after full opportunity for discovery — reveals nothing more than an internal corporate disagreement as to policy matters. Although reasonable men could disagree on the merits of the dispute, it gives rise to no inference of ulterior motives or malicious intent on either side. This is precisely the type of debate which the rule of qualified privilege is designed to foster, fashioned as it is to permit an interested participant to defend his position vigorously without fear of being penalized for his statements should some of them actually turn out to be erroneous.
The orders appealed from should be affirmed, with costs.
Judges Burke, Sciieppi, Bergan, Keating, Breitel and Jasen concur.
Orders affirmed.

. Mr. Tuck’s own description of these conversations, upon which the plaintiff relies, reads as follows: “ I was critical of both Mr. Galpin and Mr. Stillman in that I said that the reports that had reached them [the Belgians] had left with everyone * * * an erroneous and a dangerously erroneous conviction that the fellowship was to be dissolved, that it was to be nonexistent, it was to disappear. It also, in its wording or in the interpretation that the Belgians gave, very clearly left a critical view on the question of funds for institutions of interest to the Hoover family.”

. Although Pate and Tuck died after the actions were begun and their personal representatives have been substituted, we refer to them as the defendants.

. We likewise find no basis for the plaintiff’s charge that the defendants Pate and Tuck maliciously interfered with his contract of employment. His right to recover against these defendants individually stands or falls on his ability to make a sufficient showing of independently tortious conduct — and that the plaintiff has failed to do. (See Buckley v. 112 Central Park South, 285 App. Div. 331, 334; see, also, Janoff v. Sheepshead Towers, 16 N Y 2d 949, affg. 22 A D 2d 950; Potter v. Minskoff, 2 A D 2d 513, 514; Matter of Brookside Mills [Raybrook Textile Corp.], 276 App. Div. 357; Greyhound Corp. v. Commercial Cas. Ins. Co., 259 App. Div. 317; cf. Navarro v. Fiorita, 296 N. Y. 783.)