**Real LEVESQUE, Plaintiff,**

v.

**KINGS COUNTY LAFAYETTE TRUST COMPANY and William T. Vance, Defendants.**

No. 68–C–681.

United States District Court
E. D. New York.

Nov. 19, 1968.

Bernard Hubscher, New York City, for plaintiff.

McHugh & Leonard, New York City, for defendants; Martin J. McHugh, New York City, of counsel.

## MEMORANDUM AND ORDER

TRAVIA, District Judge.

This is a motion by defendant for summary judgment dismissing the complaint in this action.

The complaint alleges that plaintiff, REAL LEVESQUE, a Connecticut resident, was employed by defendant, KINGS COUNTY LAFAYETTE TRUST COMPANY (LAFAYETTE TRUST), a New York bank. The complaint further alleges that on August 24, 1967, at the law offices of Wrenn & Schmid in Kings County, defendant, WILLIAM T. VANCE, a Vice President of LAFAYETTE TRUST "acting within the scope of his employment and in furtherance of his principal's business, maliciously and falsely spoke and published * * * the following words of and concerning the plaintiff, in respect to the conduct of plaintiff's during his former employment with the defendant Kings County Lafayette Trust Company, 'That the loans to Rauso which he approved were a Ponzi operation.'"

From a reading of the papers before this Court, the facts appear to be the following. Plaintiff was in the Installment Loan Department and authorized to arrange loans of up to $10,000 on an unsecured basis, and of up to $50,000 on a secured basis. VANCE was his immediate superior. From 1965 to 1967 a series of loans were made by LAFAYETTE TRUST to one Salvatore Rauso and Esquire Products, Inc., one of his companies. At least two of these loans were for $10,000 on an unsecured basis. On July 6, 1967, LEVESQUE arranged with Rauso for a refinancing of a total of four loans. This meant the consolidation of all pre-existing indebtedness of Rauso to the bank, amounting to $42,455.28, and repayment was extended from twelve monthly installments to eighty-four monthly installments. Because of this action by LEVESQUE, his resignation was asked for on August 9, 1967. Whether this was agreed to by LEVESQUE is not clear, but in any case the bank, on August 9, 1967, issued a statement reporting LEVESQUE's resignation. On August 24th, a meeting was arranged at the offices of Wrenn & Schmid. Present were LEVESQUE; his lawyer; VANCE; a representative of the bank's surety company; Mr. Bailey, the Administrative Vice President of the bank; and the attorney for the bank. It was at this meeting that VANCE uttered the statement complained about.

In support of the motion for summary judgment, defendants state that there is no genuine issue as to the following material facts: that the allegedly defamatory statement was made by VANCE as an officer of the bank, acting within the scope of his employment and in furtherance of the bank's duties; that VANCE had a direct interest and legal duty to make the remark in question; that the persons in whose presence the remark was made each had a direct interest in the subject of the meeting and the discussion of which the statement in question was a part; and that the statement was not motivated by actual malice, personal spite, ill will, culpable recklessness or negligence.

If these facts were admitted, defendants would have the defense, under New York law[1] of qualified privilege, in that a communication by one person to another, upon a subject in which both have an interest, is protected by a qualified privilege. Shapiro v. Health Ins. Plan of Greater New York, 7 N.Y.2d 56, 194 N.Y.S.2d 509, 163 N.E.2d 333

---

1. This court's jurisdiction being based on diversity of citizenship, it must apply the substantive law of the forum state, including its rules of conflict of law. While the New York conflicts rule for torts is no longer always "lex locus delicti", there is here no dispute that New York law, as the law of the state where the alleged defamation occurred, is applicable. Bakhshandeh v. American Cyanamid Co., 211 F.Supp. 803 (S.D.N.Y.1962).

**1012**

(1959); Byam v. Collins, 111 N.Y. 143, 19 N.E. 75, 2 L.R.A. 129 (1888).

Where the defendant is making the defamatory communication primarily to protect his own interests, he must make it to some person and under such circumstances as reasonably to lead him to suppose his interests will be protected. This is usually the case when the person to whom the communication is made has an interest in common with the defendant or has some duty to perform in connection with the matter communicated. Thus a person engaged in business may have occasion to communicate defamatory matter to his business associates and if he does so, in good faith, to protect his own interests, he is not liable.

Harper & James, Torts, § 5.26 (1956)

However, the privilege is not absolute, but may be defeated by a showing of either actual malice, actual ill will, personal spite, or culpable recklessness or negligence. Stillman v. Ford, 22 N.Y.2d 48, 290 N.Y.S.2d 893, 238 N.E.2d 304 (1968). In that case the alleged defamation consisted of statements by an official of an educational foundation engaged in providing scholarships to Belgian students in the United States, to the effect that plaintiff, the former president of the foundation, had spread misstatements about the foundation and had thus been disloyal to its founder, former President Herbert Hoover. The defendant's motion for summary judgment and dismissal was granted and affirmed on the basis of qualified privilege. In finding that the plaintiff had not met the burden of destroying defendant's qualified privilege, the court noted that:

As long as the statements were motivated not by ill will or personal spite but by a sincerely held desire to protect the institution, they are not actionable. * * * Although reasonable men could disagree on the merits of the dispute, it gives rise to no inference of ulterior motives or malicious intent on either side.

22 N.Y.2d 51, 53–54, 290 N.Y.S.2d 893, 897–898, 238 N.E.2d 306–307.

In *Stillman* there had been full opportunity for discovery, 22 N.Y.2d 51, 54, 290 N.Y.S.2d 893, 898, 238 N.E.2d 307, unlike this case where there has not. However, there are grounds enough to establish that a question exists as to whether VANCE spoke the allegedly defamatory statement because of either "ulterior motives or malicious intent", or with culpable recklessness.

In his affidavit, LEVESQUE says that it was VANCE who had approved the last $10,000 loan to Rauso and signed the check; that at the August 9th meeting at the bank, Bailey accused LEVESQUE of having put VANCE in "the hot seat" by approving the consolidation. At the meeting at the law offices of Wrenn & Schmid, LEVESQUE's lawyer questioned VANCE about the approval of the last $10,000 loan to Rauso. At this point, LEVESQUE asserts, "Vance became very indignant, called me a liar", "sprang up" and said " 'This entire matter was nothing more than a Ponzi operation'."

LEVESQUE says that if his statements as to the background of the allegedly defamatory remark are correct, the statement as to the "Ponzi operation" may well have been uttered to cover up VANCE's mistake. Any indirect motive, other than a sense of duty, for the utterance of the statement may constitute malice and destroy the qualified privilege. Harper & James, Torts, § 5.27 (1956). Where there is a genuine issue as to the existence of actual malice, a motion for summary judgment must be denied. Goldwater v. Ginzberg, 261 F.Supp. 784, 787 (S.D.N.Y.1966).

Under New York law, the malice necessary to destroy a qualified privilege can also consist of "such a wanton and reckless disregard of the rights of another as is ill will's equivalent". Pecue

v. West, 233 N.Y. 316, 322, 135 N.E. 515, 517 (1922), quoted in A.B.C. Needlecraft Co. v. Dun & Bradstreet Inc., 245 F.2d 775, 777 (2d Cir. 1957).

In *Pecue* the court held that even where there was no personal ill will against the plaintiff, malice by the defendant might be inferred by the jury:

> [I]f the jury might fairly reach the conclusion that under the circumstances his action was reckless and wanton; that he made a false charge, not caring whether it was true or false; that he was guilty of more than mere negligence or bad judgment; that he did not act in good faith or because he in fact believed the plaintiff was guilty of the charges brought against him—then the complaint should not have been dismissed.

> Pecue v. West, 233 N.Y. 316, 323, 135 N.E. 515, 517.

The New York State Department of Labor, Unemployment Insurance Appeals Board, held that, as to LEVESQUE's dismissal:

> there is nothing in this record to establish that claimant was guilty of any wrong-doing or that there were any warnings to the claimant by his superiors, that he was placing his job in jeopardy by doing what he had done throughout the course of his employment.

If that can be established and proven at a trial, a jury might infer that under the circumstances VANCE's action was reckless and wanton.

■ Whether the proof shows constructive malice is a question for the jury. A.B.C. Needlecraft Co. v. Dun & Bradstreet Inc., supra 245 F.2d at p. 777.

■ Facts have been alleged showing that there is a genuine issue as to the existence of either actual or constructive malice, when the allegedly defamatory statement was made. Accordingly, the motion for summary judgment is denied.

So ordered.