PERFECT FIT INDUSTRIES,
INC., Plaintiff,

v.

ACME QUILTING CO., INC., Defendant.

77 Civ. 2004.

United States District Court,
S. D. New York.

Jan. 10, 1980.

**506**

Phillips, Nizer, Benjamin, Krim & Ballon by Jay F. Gordon, Janet P. Kane, David Jacoby, New York City, for plaintiff.

Posnack, Roberts, Cohen & Spiecens by Alan K. Roberts, Andrew D. Maslow, New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Perfect Fit Industries, Inc. ("Perfect Fit") has moved 1) pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, for judgment dismissing Acme Quilting Co., Inc.'s ("Acme") counterclaims notwithstanding the verdict; or, in the alternative, 2) pursuant to Rule 59 of the Federal Rules of Civil Procedure, for a new trial of those counterclaims.

A trial of the issues arising out of three counterclaims asserted by Acme was conducted before a jury commencing on October 30, 1979. Two of the counterclaims were for common law libel, one was for common law slander. One libel counterclaim involved a letter dated March 18, 1977, from Alvin Levine, Perfect Fit's vice-president, to Elliot Stone, president of Gimbel Brothers (Gimbel's). The March 18 letter charged Acme with submitting a "doctored" sample of its product. A second libel counterclaim involved a letter dated April 18, 1977, from Levine to George Christopher, also of Gimbel's. The April 18 letter apparently suggested that Acme used "various influences" in order to promote its product. The slander counterclaim involved an alleged statement by Levine to Linda Golub, a Gimbel's employee, that Acme had supplied women to Gimbel's buyers.

Perfect Fit moved for a directed verdict of dismissal, both at the close of Acme's case and at the close of the entire case. Those motions were denied. The case was submitted to the jury on special questions, pursuant to Rule 49 of the Federal Rules of Civil Procedure. The jury returned a verdict in favor of Acme for an aggregate sum of $7.5 million, consisting of $2.5 million in compensatory damages and $5 million in punitive damages. On each of the libel counterclaims, the verdict was for $500,000 in compensatory damages and $1 million in punitive damages. On the slander counterclaim, the verdict was for $1.5 million in compensatory damages and $3 million in punitive damages.

### Motion for Judgment Notwithstanding the Verdict

 In considering Perfect Fit's motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to Acme. *See Armstrong v. Commerce Tankers Corp.*, 423 F.2d 957, 959 (2d Cir. 1970), *cert. denied*, 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970).

The motion should be granted only if 1) there is a complete absence of probative evidence to support a verdict for Acme; or 2) the evidence is so strongly and overwhelmingly in favor of Perfect Fit that reasonable and fair minded persons in the exercise of impartial judgment could not arrive at a verdict against Perfect Fit.

 Perfect Fit argues that the allegedly defamatory communications made by Perfect Fit to others were upon a subject in which Perfect Fit and the others both had an interest, and accordingly, the communications were protected by a qualified privilege. See *Stillman v. Ford*, 22 N.Y.2d 48, 53, 290 N.Y.S.2d 893, 897, 238 N.E.2d 304 (1968). This qualified privilege may be overcome and defeated by a showing by Acme that the allegedly defamatory statements were motivated by actual malice. *See id.* In other words, a qualified privilege negates any presumption of implied malice flowing from the allegedly defamatory statements, and places the burden of proving actual malice upon Acme. *See Toker v. Pollak*, 44 N.Y.2d 211, 219, 405 N.Y.S.2d 1, 5, 376 N.E.2d 163 (1978). Actual malice has been defined by the New York Court of Appeals as "personal spite or ill will, or culpable recklessness or negligence." *Hoeppner v. Dunkirk Printing Co.*, 254 N.Y. 95, 106, 172 N.E. 139, 142 (1930). Perfect Fit argues that there was insufficient evidence to go to the jury on the question of actual malice, and therefore, that judgment notwithstanding the verdict should be granted in favor of Perfect Fit.

 In support of its position, Perfect Fit notes that at one point in the trial the court found that there was evidence from which the jury might find that Levine had acted "at least negligently, not recklessly." (Tr. 511) As Acme has correctly noted, this passage has apparently been subject to an inadvertent error by the court reporter in the preparation of the transcript. In fact, the court stated that there was evidence from which the jury might find that Levine had acted "at least negligently, if not recklessly." The version urged by Perfect Fit would be senseless, given the context of the statement—including the court's denial of Acme's motion for a directed verdict and the court's instructions to the jury.

The evidence indicating actual malice on the part of Levine, while certainly not overabundant, was sufficient to allow the question of actual malice to go to the jury. Of course, actual malice may be demonstrated by either direct or circumstantial evidence. In the case at hand, there was sufficient circumstantial evidence from which the jury might infer actual malice.

For example, the jury might infer actual malice from the fact that Levine allegedly made statements defaming Acme in three separate communications. Repeated acts of defamation could properly be considered by the jury in determining actual malice. Moreover, the jury might consider Levine's testimony that he redrafted one letter fifteen times. The jury could consider this deliberate action as evidence possibly indicating actual malice. Finally, actual malice might be inferred from the communications themselves, to the extent that they contained statements aimed directly at Acme's reputation. As the Second Circuit has noted, "[m]alice may be inferred from the very violence and vituperation apparent upon the face of the libel itself." *Reynolds v. Pegler*, 223 F.2d 429, 434 (2d Cir. 1955). In summary, there was sufficient evidence to go to the jury on the question of actual malice.

Perfect Fit also argues that judgment notwithstanding the verdict should be granted on the ground that Acme failed to prove that it sustained actual injury. In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974), the Supreme Court restricted "defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury." The Court explained:

> Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and

mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.

*Id.* at 350, 94 S.Ct. at 3012.

In the case at hand, there was sufficient competent evidence from which the jury might find actual injury in the form of impairment of Acme's reputation. In particular, Elliot Stone, president of Gimbel's, wrote after receiving Levine's letter of March 18, 1977, that the letter was a "serious accusation." While a subsequent Gimbel's investigation of Levine's allegations concluded that the allegations were false, the jury might conclude that the "serious accusation" in the letter impaired Acme's reputation. While three witnesses testified that their opinion of Acme's reputation was not affected by the allegedly defamatory communications, a jury might choose to infer from the evidence as a whole that other individuals who received the allegedly defamatory communications would not share the views of the three witnesses and that, accordingly, Acme's reputation was impaired. While the evidence supporting a finding of actual injury is not particularly persuasive, the evidence was barely sufficient to require submission of the question to the jury.

Finally, Perfect Fit argues that judgment notwithstanding the verdict should be granted with respect to the April 18, 1977, letter. As Acme made no attempt to prove special damages, Acme could only establish liability if the letter was libelous per se—that is, if the words were defamatory on their face. Under New York law, " '[i]n certain instances, where the utterance of the defendant is not clearly actionable per se, the surrounding circumstances and conditions must be taken into account to determine the matter.' " *McCart v. Morris*, 58 App.Div.2d 700, 701, 396 N.Y.S.2d 107, 108 (3d Dept. 1977) (quoting 34 N.Y. Jur., Libel and Slander § 3, at 472). In the case at hand, the only basis urged in support of liability was the April 18 letter's use of the words "various influences." The court is of the opinion that, in light of the surrounding circumstances and conditions, the April 18 letter was reasonably susceptible of a libelous per se reading. Accordingly, the question was properly submitted to the jury to determine whether the words were likely to be understood as libelous per se by the ordinary and average reader. *See James v. Gannett Co.*, 40 N.Y.2d 415, 419, 386 N.Y.S.2d 871, 875, 353 N.E.2d 834 (1976).

In summary, Perfect Fit's motion for judgment notwithstanding the verdict must be denied.

### Motion for a New Trial

In considering Perfect Fit's motion for a new trial, this court has power to set aside the jury's verdict as excessive, and a duty to do so, if the court conscientiously believes that the jury has exceeded the bounds of propriety. *Dellaripa v. New York, New Haven & Hartford Railroad Co.*, 257 F.2d 733, 735 (2d Cir. 1958). The court must determined whether the jury's verdict is so unreasonable that it would be unconscionable to permit it to stand. *Devlin v. Safeway Stores, Inc.*, 235 F.Supp. 882, 885 (S.D.N.Y.1964). The test is whether an award is so high as to shock the "judicial conscience" or to compel the conclusion that it was the result of passion or prejudice. *Buda v. Royal Netherlands SS Co.*, 280 F.Supp. 180, 182 (S.D.N.Y.1967). *See also Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir. 1978) (standard for appellate review is whether the award is so high as to shock the judicial conscience and constitute a denial of justice); *Dagnello v. Long Island Rail Road Co.*, 289 F.2d 797, 806 (2d Cir. 1961) (standard for appellate review is whether award is so high as to constitute a denial of justice).

In the case at hand, the jury awarded Acme $2.5 million in compensatory damages and $5 million in punitive damages. The jury's award of $5 million in punitive damages brings to mind Judge Friendly's observation that "the trend to-

ward extremely large punitive damage awards may require trial and even appellate courts to subject such awards to more exacting scrutiny than awards of compensatory damages." *Morrissey v. National Maritime Union of America,* 544 F.2d 19, 34 (2d Cir. 1976) (representing views of Friendly, J., alone). The Second Circuit has subsequently indicated, however, that the same standard should be applied by a trial court in evaluating punitive damages as in evaluating compensatory damages. *See Zarcone v. Perry, supra,* 572 F.2d at 56–57 (appellate standard). Thus, an award of punitive damages should not be disturbed unless the amount shocks the "judicial conscience" or is so clearly excessive as to compel the conclusion that it is the result of passion or prejudice. *Reynolds v. Pegler,* 123 F.Supp. 36, 39 (S.D.N.Y.1954), *aff'd,* 223 F.2d 429, 434 (2d Cir.) (trial court applied proper standards), *cert. denied,* 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754 (1955).

In the case at hand, this court is of the opinion that the jury's award of $2.5 million in compensatory damages and $5 million in punitive damages shocks the "judicial conscience" and is so high as to constitute a denial of justice. The allegedly defamatory communications were made to a total of nine persons—all of whom were employees of Gimbel's. While the evidence was barely sufficient to submit the question of actual injury to the jury, certainly there was not sufficient evidence to sustain a finding that the alleged impairment of Acme's reputation warranted $2.5 million in compensatory damages. It is important to note that Perfect Fit and Acme were business competitors. The allegedly defamatory communications were made in an apparent attempt by Levine to convince Gimbel's to purchase Perfect Fit's product rather than Acme's product.

In light of the trial record, the jury's award of $2.5 million in compensatory damages is shockingly excessive. One witness testified that the allegedly defamatory letters did not "create any fuss" and that they had no impact upon Gimbel's relationship with Acme. Another witness, the sole auditor of the alleged slander, testified that

Levine's statement to her did not affect adversely her opinion of Acme. A third witness similarly testified that the allegedly defamatory communications had no adverse impact on Gimbel's business relationship with Acme and that he was not aware of any instances in which Acme had lost any business as a result. At no point in the trial did any witness testify that the allegedly defamatory communications had impaired Acme's reputation. Of course, the jury could infer such an impairment of reputation from the evidence in the case. Nevertheless, any inference which would lead to an award of $2.5 million based on the trial record shocks the "judicial conscience."

The jury's award of $5 million in punitive damages is equally shocking. Admittedly, there was sufficient evidence from which the jury might infer actual malice, and accordingly, the jury could decide to award punitive damages. Yet, nothing in the trial record would even remotely suggest that $5 million in punitive damages would be appropriate. The evidence of actual malice, while sufficient to require submission of the question to the jury, was hardly suggestive of malicious conduct which would call for $5 million in punitive damages.

This court has no other choice but to find that, on the trial record, the $7.5 million in damages awarded by the jury shocks the "judicial conscience." Moreover, this $7.5 million verdict is so grossly excessive as not to be susceptible to correction by remittitur; instead, a new trial is necessary. *Atkinson v. Equitable Life Assurance Society,* 519 F.2d 1112, 1114 (5th Cir. 1975); see id. at 1119 ("Attempting a remittitur from such a slash would amount to restoring a reasonable portion of the severed head."). In light of the gross excessiveness and patent irrationality of the jury's award, there is no rational formula by which a remittitur could be calculated. Since the jury's verdict is so excessive as to suggest the possibility that it was the result of passion or prejudice, the court must order a new trial. Were the court to order a partial new trial

limited solely to the issue of damages, the possibility would remain that the initial finding of liability was tainted by the jury's passion or prejudice. Accordingly, the court must order a complete new trial.

*Conclusion*

For the reasons stated above, Perfect Fit's motion for judgment notwithstanding the verdict is denied. However, Perfect Fit's motion for a new trial is granted.