Edward McMANUS, Plaintiff,

v.

Michele McCARTHY, Eric Heckl,
Donald McWeeney and Arthur
R. Finley, Defendants.

No. 82 Civ. 4788 (RLC).

United States District Court,
S.D. New York.

March 7, 1984.

Zwerling & Zwerling, New York City, for plaintiff; Linda Strumpf, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendants; Twila L. Perry, Asst. U.S. Atty., of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff in this libel action, removed from New York State Supreme Court, is a merchant marine captain. Defendants Michele McCarthy, Eric Heckl and Donald McWeeney were, at the relevant time, midshipmen at the United States Merchant Marine Academy at Kings Point, New York.

Defendant Arthur R. Finley, a captain, is an Academy Training Representative at Kings Point. Plaintiff alleges that he was libeled by two memoranda sent to Captain Finley, one by McCarthy and one by Heckl and McWeeney. Both reports were subsequently sent to plaintiff's employer, Apex Marine Corp.

The allegedly defamatory memoranda were prepared, on Captain Finley's orders, to explain an incident that had occurred in connection with McCarthy's assignment to plaintiff's vessel, the Golden Monarch. All students at the Academy must fulfill certain shipboard training requirements, and on or about March 19, 1982, McCarthy was assigned to serve as deck cadet aboard the Golden Monarch. Along with Heckl and McWeeney, McCarthy went to Reynolds Launch Service in Staten Island, New York, for transportation to the Golden Monarch. At the launch site the three midshipmen first encountered plaintiff. Precisely who said what to whom is intensely disputed by the parties, but it is agreed that McCarthy did not board the vessel. Captain Finley ordered McCarthy, Heckl and McWeeney to submit written reports to him accounting for McCarthy's failure to join the Golden Monarch. The reports they produced, and which plaintiff claims defamed him, are reproduced in the appendix to this opinion.

*Official Immunity*

Defendants have moved for summary judgment dismissing the complaint, claiming that, as federal employees, they are absolutely immune from liability for common law torts committed in the course of their employment. Plaintiff denies that official immunity is absolute, that the acts complained of were within the scope of defendants' duties, and that defendants were, in fact, federal employees.

(a) *Captain Finley*

Although a federal official has only a qualified, good faith immunity to liability for torts involving constitutional or statutory violations, *Harlow v. Fitzgerald*, 457

U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), official immunity is absolute if the claim is rooted in the common law and the challenged actions were within the "outer perimeter" of the official's duties. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *see Butz v. Economou,* 438 U.S. at 495, 98 S.Ct. at 2905; *Sprecher v. Graber,* 716 F.2d 968, 975 (2d Cir.1983); *Donohoe v. Watt,* 546 F.Supp. 753, 755 (D.D.C.1982), *aff'd,* 713 F.2d 864 (D.C.Cir.1983).

■ As an Academy Training Representative, Captain Finley supervises the shipboard training phase of the cadets' schooling. Finley Aff. ¶ 2. This position requires him to arrange placements with private shipping companies and to insure that the ships to which cadets are assigned provide a safe working and learning environment. *Id.* ¶¶ 3, 5. It is also his job to investigate any allegations of misconduct by cadets on board ship. *Id.* ¶ 4. Given these responsibilities, there is no question that it was well within the "outer perimeter" of Captain Finley's duties to order the midshipmen to file reports on the incident involving plaintiff, and, if he believed it appropriate, to forward copies of those reports to Apex Marine Corp.[1]

Plaintiff does not seriously dispute this, but contends that Captain Finley should have made a more complete investigation of the incident before permitting the memoranda to be forwarded to plaintiff's employer. Even assuming, however, that Captain Finley did fail to complete a proper investigation, and that this rendered his otherwise unimpeachable decision to send the reports to Apex wrongful, sending the reports was still squarely within the ambit of his authority.

> [T]o separate the activity that constitutes the wrong from its surrounding context—an otherwise proper exercise of authority—would effectively emasculate the immunity defense. Once the wrongful acts are excluded from an exercise of

authority, only innocuous activity remains to which immunity would be available. Thus, the defense would apply only to conduct for which it is not needed.

*Wallen v. Domm,* 700 F.2d 124, 126 (4th Cir.1983).

Nothing in the record casts any doubt upon Captain Finley's status as a federal employee. The United States Merchant Marine Academy is wholly within the United States Department of Transportation, 46 U.S.C. § 1295 *et seq.,* and Captain Finley has stated that he is paid by government check. Finley Aff. ¶ 6. Although plaintiff appears to question Captain Finley's employment status, he has introduced no evidence that creates a question of fact that would preclude summary judgment on this issue. Therefore, since plaintiff's claim sounds only in the common law of tort, *see Paul v. Davis,* 424 U.S. 693, 711–712, 96 S.Ct. 1155, 1165–1166, 47 L.Ed.2d 405 (1976), the court finds that the doctrine of official immunity provides Captain Finley with a complete defense to this action.

(b) *The Cadets*

■ McCarthy, Heckl and McWeeney prepared their memoranda at the express command of their supervisor and superior officer, Captain Finley. McCarthy Aff. ¶ 10; Heckl Aff. ¶ 7; Finley Aff. ¶¶ 8, 11. Thus there can be no doubt that it was within the "outer perimeter" of their duties to do so. Federal employees instructed to submit reports to their supervisors evaluating personnel or detailing incidents under investigation have consistently been held absolutely immune from liability for allegedly defamatory statements contained in those reports. *See e.g. Ruderer v. Meyer,* 413 F.2d 175 (8th Cir.1969), *cert. denied,* 396 U.S. 936, 90 S.Ct. 280, 24 L.Ed.2d 235 (1969); *Preble v. Johnson,* 275 F.2d 275 (10th Cir.1960); *Malone v. Longo,* 463 F.Supp. 139 (E.D.N.Y.1979). Indeed, it would plainly be absurd to conclude that a federal official has the authority to require

---

**1.** Defendants vigorously deny that Captain Finley sent the memoranda to Apex, but for the purpose of assessing his official immunity, the court assumes that he did.

his subordinates to file reports but that the latter exceed the scope of their duty when they produce them. *See Gordon v. Adcock*, 441 F.2d 261 (9th Cir.1971). Plaintiff argues that the cadets moved outside the "outer perimeter" of their duty when they wilfully included libelous falsehoods in their reports, but as noted above, if the alleged wrong is separated from its context and judged separately, nothing remains of the immunity defense. *Wallen v. Domm*, 700 F.2d at 126.

Plaintiff also argues that the cadets were not federal employees. While it is true that midshipmen McCarthy, Heckl and McWeeney were students and not salaried government workers, their relationship to the federal government warrants application of the official immunity doctrine to them under the circumstances of this case. Academy cadets are not "hired" by the United States, but they are selected for admission according to federally prescribed procedures and their room, board and educational supplies are provided by the government. More importantly, they are under the direct supervision and control of their superior officers at the Academy, who are federal employees. Although not strictly under military discipline, *cf. Fischer v. United States*, 451 F.Supp. 918 (E.D. N.Y.1978), they are certainly required to obey the legitimate orders of those superiors. While carrying out the tasks assigned to them, they are performing a federal function under the control of federal officials and are, therefore, entitled to the immunities accorded to those who are federal "employees" in a more technical sense. *See Becker v. Philco Corp.*, 372 F.2d 771 (4th Cir.1967) (government contractor entitled to official immunity for submitting required report to defense department), *cert. denied* 389 U.S. 979, 88 S.Ct. 408, 19 L.Ed.2d 473 (1967); *Blum v. Campbell*, 355 F.Supp. 1220 (D.Md.1972) (building management company and its vice-president entitled to official immunity when managing FHA owned building under direct control and supervision of FHA). Here, the defendant cadets, by virtue of their affiliation with a United States educational institution, were required to comply with a federal official's order that they prepare and submit to him a report concerning an incident connected to the school's official business. The principles behind the doctrine of official immunity are fully applicable to their case.

■ Although the court has concluded that the cadet defendants are immune from liability for writing the memoranda and submitting them to Captain Finley, it does not follow that their immunity extends to the forwarding of the reports to plaintiff's employer, Apex Marine Corp. Since it would have been within the scope of Captain Finley's duties to send the two reports to Apex, the cadets would also be immune from liability for having done so if Captain Finley had instructed them to do it. But the evidence before the court, at the very least, raises a question of fact in this regard. Nothing presently in the record indicates that the students had a duty to send their reports to Apex on their own initiative. While the court need not rule, at this time, that it was beyond the "outer perimeter" of the cadets' duty to send the reports to Apex, summary judgment for defendants is precluded on this issue.

Defendant Heckl admits to having sent copies of the reports to Apex. Heckl Aff. ¶ 10. McCarthy admits to having known that Heckl would do so. McCarthy Aff. ¶ 11. Defendants' affidavits are consistent in their statements that McWeeney neither authorized nor consented to Heckl's action, and was, in fact, unaware of Heckl's intention. Plaintiff offers nothing to the contrary. The complaint should thus be dismissed as against McWeeney.

*Qualified Privilege*

■ On public policy grounds, New York recognizes a qualified privilege for communications made by a person, having an interest in or duty with respect to the subject matter, to another person with a corresponding interest or duty. The privilege is qualified, rather than absolute, in that it applies only to communications made in good faith. If plaintiff can prove that de-

fendant was motivated not by a genuine belief that he had a legal or moral duty to communicate certain facts to an interested party, but by actual malice, ill-will, personal spite or culpable recklessness or negligence, the privilege is destroyed. *Stillman v. Ford*, 22 N.Y.2d 48, 290 N.Y.S.2d 893, 897, 238 N.E.2d 304 (1968); *see Perfect Fit Industries v. Acme Quilting Co.*, 494 F.Supp. 505, 507 (S.D.N.Y.1980) (Motley, C.J.).

Defendants argue that they shared with Captain L. Berger, the President of Apex Marine and the individual at Apex to whom the reports were sent, a legitimate concern for the quality of the shipboard training phase of Academy students' education. As well as the president of a company whose ships employ Academy cadets, Captain Berger is an active alumnus of Kings Point. Defendants conclude that the qualified privilege covers their communication to Captain Berger because its subject, plaintiff's behavior toward the cadet defendants and his general fitness to supervise cadets, touched this area of mutual interest.

However this may be, summary judgment cannot be granted because a factual dispute exists over defendants' good faith. The version of the incident at Reynolds Launch Service contained in the affidavits of plaintiff, Robert Rawson, the chief engineer of the Golden Monarch, who was on the scene, and Midshipman Matthews, who was also present, differs substantially from that contained in the allegedly libelous memoranda and in defendants' affidavits. What actually occurred is a question of fact incapable of resolution on a motion for summary judgment. *Heymann v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir.1975). It follows that plaintiff's affidavits also raise the question of whether defendants' knew their account of events to be false at the time they wrote their reports. If plaintiff can prove that this was the case, he will succeed in proving actual malice and defendants will lose the qualified privilege. *Neufeld v. Schachner*, 61 A.D.2d 952, 403 N.Y.S.2d 41, 43 (1st Dep't. 1978); *Mercedes-Benz of North America v. Finberg*, 58 A.D.2d 808, 396 N.Y.S.2d 260, 262 (2d Dep't. 1977).

*Libel Per Se*

The court finds no merit in defendants' contention that the memoranda are not libelous per se, and thus that the complaint must be dismissed for failure to plead special damages. *Perfect Fit Industries v. Acme Quilting Co.*, 494 F.Supp. 505, 508 (S.D.N.Y.1980) (Motley, C.J.); *McGraw v. Watkins*, 49 A.D.2d 958, 373 N.Y.S.2d 663, 665 (3d Dep't. 1975). Words tending to disparage a person in his professional capacity by imputing to him professional misconduct, incompetence, ignorance or unfitness are libelous per se. *McCullough v. Certain Teed Products Corp.*, 70 A.D.2d 771, 417 N.Y.S.2d 353, 355 (4th Dep't. 1979); *Four Star Stage Lighting, Inc. v. Merrick*, 56 A.D.2d 767, 392 N.Y.S.2d 297, 298 (1st Dep't. 1977). The memoranda here in question state, *inter alia*, that plaintiff was the cause of another cadet requesting discharge from the Golden Monarch; that one who did not drink aboard the Golden Monarch was made miserable by the crew; that five other merchant marine officers had refused to work with plaintiff and that plaintiff was proud of the fact; that plaintiff was a "known problem"; that it was questionable whether plaintiff was under the influence of alcohol; that plaintiff took pleasure in creating "highly intensified pressure situations"; that plaintiff would do everything in his power to undermine a cadet's learning experience; that the environment on the Golden Monarch was unsafe for a cadet; that plaintiff is ignorant of the responsibilities and duties of cadets; that plaintiff said that Kings Pointers "aren't worth a shit"; and that plaintiff pushed into defendant Heckl, threatening him by saying, "You better watch yourself asshole, or you're gonna get hurt."

Defendants argue that although the memoranda may question plaintiff's abilities as a teacher, they do not disparage his professional qualifications because plaintiff makes his living as a sea captain. The court, however, will not engage in so fine a dissection of plaintiff's job description.

Among plaintiff's responsibilities was supervising cadets assigned to his vessel. It is clear that a reader of defendants' reports might conclude that plaintiff was unfit for that aspect of his job and that he acted improperly in his professional relationship with defendants and other cadets with whom he had dealt.

*Conclusion*

The complaint is dismissed in its entirety as against defendants Finley and McWeeney. To the extent that it seeks relief for the publication of the allegedly libelous reports to Captain Finley, the complaint is also dismissed as against defendants McCarthy and Heckl. As plaintiff has stated a viable claim against Heckl and McCarthy for the publication of the memoranda to Captain Berger of Apex Marine Corp., defendants' motion for summary judgment is otherwise denied.[2]

IT IS SO ORDERED.

## APPENDIX

March 11, 1982

MEMORANDUM FOR: Captain Arthur R. Finley

ATR–NY

Subject: Midshipman Michele McCarthy, Class of 1983D

SS GOLDEN MONARCH; Reasons for not boarding

Midshipman Michele McCarthy, 2/c was instructed by ATR–NY, Captain Arthur R. Finley, to report to the SS GOLDEN MONARCH by 0200 March 11, 1982.

Midshipman McCarthy arrived at the Reynolds Launch Service on Staten Island at approximately 2300 on March 10, 1982, accompanied by Midshipman Eric E. Heckl and Midshipman Donald McWeeney, both first classmen.

Upon arrival the three encountered Midshipman Cynthia Matthews, 2/c, who informed them that Midshipman Lynn Crad-

dock had specifically requested discharge from the Golden Monarch due to problems she encountered aboard with Captain McManus and the crew. Her discharge was granted by the ATR–NY, but Midshipman McCarthy is not sure whether Midshipman Craddock had apprised ATR–NY of the situation aboard the vessel.

Midshipman Matthews, 2/c, continued to describe the drinking habits of the crew stating that one who did not participate in these activities was made miserable by the crew.

At this point, all four midshipmen encountered the Captain, Chief Engineer, and several crew members. Upon introduction, the Captain became very hostile and stated that another Mass Maritime deck cadet was aboard and that he had precedence over Midshipman McCarthy. Midshipman McCarthy responded, "well, do you take two deck cadets. Arrangements have been made by my supervisor with your company for me to board". The Captain stated that that depended. Midshipman McCarthy stated, "do you want me or not. I am a good cadet and willing to learn". The Captain stated, "I don't want a good cadet, cadets are baggage and I want a good mate". At this she replied, "Yes sir. I see" and she went to discuss the situation further with Midshipman Matthews who advised her to seriously consider about boarding.

Meanwhile, the Captain went on to berate Kings Pointers and was very caustic with the two first class midshipmen.

It was at this point that Midshipman McCarthy decided to try and contact Captain Finley and inform him of the problem with the other Mass cadet aboard, but due to the lateness of the hours, this was decided against. It is important to note that the Captain *never* said he would accept Midshipman McCarthy aboard as the second cadet. He seemed very proud of the fact

---

**2.** Counts one and two of the complaint address the publication of the memoranda to Captain Finley. Count three asserts a claim against Captain Finley for sending the reports to Apex. All three counts are dismissed. Count four, which is styled as a civil conspiracy claim, liberally construed, alleges that McCarthy and Heckl sent

the libelous memoranda to Captain Berger. It would be prudent for plaintiff to file an amended complaint explicitly stating his claim for relief in a manner consistent with this opinion. Leave to file such an amended complaint is hereby granted.

that five officers had refused to sign on with him as Master. This only further proves that the man in a known problem, especially when shipping is so bad, it is rare that anyone will pass up a job.

Also, he and the Chief Engineer physically threatened Midshipman Heckl, who is no way provoked such a reaction. The Captain was treated with respect deserved by his rank by all three midshipmen and yet he continued to be very abusive and caustic toward us. It was questionable as to whether the Captain was under the influence of alcohol, but it was not noticeable to Midshipman McCarthy.

At this point, Midshipman McCarthy decided that it was essential that she not board the vessel in question in order to avoid eminent problems and heartache that would otherwise occur upon boarding. She felt that in view of all of the above, that Captain Finley would be in agreement with her decision.

It was very obvious that the Captain pleasured in running highly intensified pressure situations and would do everything in his power to undermine any possible learning experience that could be attained by a cadet.

It is in situations such as this that serious mistakes are made. On a tanker there is not room for even the smallest mistake as is proven by the recent explosion of the GOLDEN DOLPHIN of the same Apex Company. It was not a safe environment for any cadet to enter into.

All three Midshipmen strongly recommend that some action be taken to prevent future cadets from having to sail under the direction of Captain McManus and be subjected to his abusive manner and obvious dislike of Kings Pointers. It would not be a healthy atmosphere in which to enter, nor would it be the best environment in which to learn, which is the main purpose of the sea year.

Respectfully submitted,

/s/ Michele D. McCarthy 2/c

Michele D. McCarthy

1983 Deck

March 12, 1982

MEMORANDUM FOR: Captain Arthur R. Finley

Subject: Midshipman Michele McCarthy, 83D

SS GOLDEN MONARCH: Reasons for not boarding

On March 11, 1982, Midn. Heckl, 1/c, 6th Company Commander, Midn. McWeeney 1/c accompanied Midn. McCarthy 2/c to help her board the GOLDEN MONARCH via launch from Staten Island.

Upon reaching the launch, the above midshipman met Captain McManus. When Midn. McCarthy introduced herself as the deck cadet, Capt. McManus retorted very loudly "We already have a Mass. deck cadet and *he* has precedence!" To this, Midn. McCarthy replied that her supervisors had assigned her to the GOLDEN MONARCH and could he take 2 cadets. Capt. McManus replied he would, but "you have to be good." Midn. McCarthy replied that she was a good cadet and willing to learn. To this, Capt. McManus replied that he didn't need cadets, "they are baggage, you have to be a good mate." Capt. McManus obviously does not realize that cadets are put aboard *to learn;* were they already third mates, there would be little reason in assigning them to ships in the capacity as a cadet. The fore-going is of little consequence except to illustrate the fact that Capt. McManus is ignorant to the duties and responsibilities of cadets and would not be of benefit to their education aboard ship. Further he would serve to be a detriment to their career attitude as a young maturing adult. The following account will support this.

At this point, Midn. McCarthy was led away, obviously upset at Capt. McManus' hostile reaction by the engine cadet already aboard, Midn. Mattews, 2/c. Midn. Mattews indicated that Capt. McManus *was* the reason that the previous cadet had gotten off the ship and that Midn. McCarthy should reconsider boarding the GOLDEN MONARCH.

Captain McManus continued to berate and visciously attack Kings Pointers to the other two Midshipman. He said "They aren't worth a shit, just look at the track

record—how many of them are at sea now?" Midn. Heckl continued to listen to the attack when Capt. McManus related to the unfortunate accident of the GOLDEN DOLPHIN. Midn. Heckl indicated that he was very close to one of the victims, Steven Wickboldt. To this, Capt. McManus became angry saying that "you could not have known Steve—he wouldn't have had anything to do with the likes of you." This, I found particularly offensive and unnecessary in light of the fact that I was a close friend of Steven's for five years and have had a difficult time justifying his death.

Capt. McManus was then questioned by myself as to what right he had to make a statement of this nature. He then became very loud and pushed into me saying that "You better watch yourself asshole, or you're gonna get hurt." I replied that I had conducted myself in nothing other than a gentlemanly fashion and treated Capt. McManus with due respect and that I expected to be treated in the same fashion.

Midn. Heckl and McWeeney then conferred over the situation and decided in concurrence with Midn. McCarthy that she should not board the vessel.

Both Midn. Heckl and Midn. McWeeney are first-classmen and both have exceptional shipboard records. Both midshipman feel that Capt. McManus is beyond the "cranky old man." He is contemptuous, spiteful and resentful of young adults. Never have either of the two Midshipmen been confronted with such a hateful atmosphere nor someone so caustic and cold towards their fellow man as evidenced by the comment concerning Steven Wickboldt. It is the opinion of these two midshipmen that cadets should not be assigned under this captain again. The atmosphere generated would not be conducive to a learning environment and serve as a severe detrement to the sea year program.

Respectfully submitted,
/s/ Midn. Eric Heckl, 6th Co. Commander
/s/ Midn. Don McWeeney, 1/c
Midn. Eric Heckl, 6th Co. Commander
Midn. Don McWeeney, 1/c