Langenkamp v. Olson

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of October, two thousand fifteen.

PRESENT: JON O. NEWMAN,
JOHN M. WALKER, JR.,
DENNIS JACOBS,
            <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - -X

LUCINDA LANGENKAMP,
        <u>Plaintiff-Appellant</u>,

        -v.-                                14-3861

TOM OLSON, LANCE IRVING, NEW YORK UNIVERSITY, TERRY FULMER,
        <u>Defendants-Appellees</u>.

- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:          PETER G. EIKENBERRY, New York, New York.

FOR APPELLEES:          MERCEDES COLWIN (Kuuku Minnah-Donkoh, <u>on the brief</u>), Gordon & Rees, LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Hellerstein, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED IN PART** and **VACATED IN PART**, and that the case be **REMANDED** for further proceedings consistent with this order.

Lucinda Langenkamp appeals from the judgment of the United States District Court for the Southern District of New York (Hellerstein, J.), dismissing her complaint against her employer and related persons. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**1.** Langenkamp's breach-of-contract claim against New York University ("NYU") was dismissed on the grounds that Langenkamp (a) was an at-will employee, and that (b) she had no entitlement to the protections of the NYU Faculty Handbook. We agree with the former ruling, but not the latter.

**a.** "New York has a well-established at-will employment doctrine: '[A]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.'" Albert v. Loksen, 239 F.3d 256, 264 (2d Cir. 2001) (quoting Sabetay v. Sterling Drug, Inc., 506 N.E.2d 919, 920 (N.Y. 1987)).[1] In resisting that presumption, Langenkamp relies primarily on her offer letter (attached as an exhibit to the complaint), which mentions a "12-month per year position" and promises compensation at a certain "annual salary." Ex. 1 to 2d Am. Compl. ("Offer Letter"). However, "[t]he mere fact that the hiring is at so much a year, without a specified duration, is not evidence that the hiring is for

---

[1] "Jurisdiction in this case is premised on diversity, and the parties both present arguments based on New York law, the law of the forum state. It is therefore appropriate for this Court to apply New York law." Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 121 n.5 (2d Cir. 1998).

such a period." Todd v. Grandoe Corp., 302 A.D.2d 789, 790 (N.Y. App. Div. 3d Dep't 2003). Langenkamp's termination, standing alone, did not breach the parties' employment contract.

**b.** We agree with Langenkamp, however, that her complaint plausibly alleges a breach of certain contractual protections in the NYU Faculty Handbook.

"Policies in a personnel manual specifying the employer's practices with respect to the employment relationship, including the procedures or grounds for termination, may become a part of the employment contract." Baron v. Port Auth. of N.Y. & N.J., 271 F.3d 81, 85 (2d Cir. 2001). "To establish that such policies are a part of the employment contract, an employee alleging a breach of implied contract must prove that (1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment." Id.

At the same time, "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." Lobosco v. N.Y. Tel. Co./NYNEX,751 N.E.2d 462, 465 (N.Y. 2001). Accordingly, the "mere existence of a written policy . . . does not limit an employer's right to discharge an at-will employee or give rise to a legally enforceable claim." De Petris v. Union Settlement Ass'n, Inc., 657 N.E.2d 269, 271 (N.Y. 1995).

NYU's offer of employment confirms that the provisions of the NYU Faculty Handbook were contractual. See Offer Letter ("In accepting this offer, you agree to abide by all NYU policies in effect from time to time, including but not limited to the Faculty Handbook . . . ."). And that Faculty Handbook specifies procedures that NYU must follow before terminating a faculty member (including, for example, a disciplinary hearing, and an opportunity to appeal any sanction). See 2d Am. Compl. ¶ 37. Lankenkamp alleges (and NYU hardly disputes) that none of these procedures were followed before her termination. Id. ¶ 38.

3

NYU argues that Langenkamp never "detrimentally relied" on the policies in the Faculty Handbook "in accepting or continuing employment," as is required under New York law to state a claim for breach of an implied contract in an employment handbook. <u>Baron</u>, 271 F.3d at 85. But assuming reliance is required, Langenkamp alleges that she suffered damages, among other reasons, as a result of her signing a one-year lease for an apartment in New York, now "for which she has no need." 2d Am. Compl. ¶ 39(d)(iv); <u>see also</u> <u>id.</u> ¶ 32 (alleging that she resigned from her prior position to accept the job at NYU "[i]n reliance upon the offer, her acceptance, and the affirmation of appointment to a non-tenured faculty position by NYU").

Accordingly, accepting the factual allegations of the complaint as true, and drawing all reasonable inferences in Langenkamp's favor, her complaint should have survived NYU's motion to dismiss; she alleges much more than the "mere existence of a written policy," <u>De Petris</u>, 657 N.E.2d at 271, in an employer handbook. We vacate that portion of the judgment that dismissed the breach-of-contract claim and remand for further proceedings.[2]

**2.** As to the defamation claims, the district court correctly concluded that each was meritless (against defendants-appellees Fulmer and Irving at the motion-to-dismiss stage; and against defendant-appellee Olson at summary judgment).

---

[2]    For the first time at oral argument, counsel for NYU made several new arguments that did not appear in the briefs (<u>e.g.</u>, that the disciplinary procedures in the Faculty Handbook do not apply to non-tenured faculty, <u>but see</u> 2d Am. Compl. ¶ 37, and that Langenkamp was entitled to no process because she was not disciplined for violation of a "rule or regulation" of NYU). These arguments were raised too late, so we do not consider them. <u>See, e.g.</u>, <u>Norton v. Sam's Club</u>, 145 F.3d 114, 117 (2d Cir. 1998). We leave it to the sound discretion of the district court to consider any additional arguments for dismissal offered by NYU on remand (including, for example, that Langenkamp suffered no compensable damages for any breach of contract).

4

As Langenkamp concedes on appeal, all of the allegedly defamatory statements were protected by New York's qualified privilege for "communication[s] made by one person to another upon a subject in which both have an interest." Stillman v. Ford, 238 N.E.2d 304, 306 (N.Y. 1968); see also Albert, 239 F.3d at 272 ("Communications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge, fall within the privilege."). But "[a] defendant forfeits this qualified privilege by making a false, defamatory statement with 'malice' of either the common-law or constitutional variety." Albert, 239 F.3d at 272.

Even construing the record evidence in Langenkamp's favor, no reasonable jury could find that Olson acted with malice in denying that he signed Langkenkamp's credit application. Other than Langenkamp's own self-serving and ever-shifting testimony, all of the evidence suggests that Olson's words were not only uttered in good faith, but were actually true. Accordingly, there is no genuine factual dispute to be resolved by a jury.

Similarly, Langkenkamp did not plausibly allege that Fulmer or Irving acted with malice in repeating any defamatory statement made by Olson. Fulmer and Irving were entitled to rely on the repeated (and plausible) assurances from Olson that he did not sign Langenkamp's credit card application.

In the absence of malice, Langenkamp's defamation claims fail.

* * *

We acknowledge that plaintiff's surviving contract claims are narrow: that plaintiff did not receive the hearing to which she was entitled before she was terminated. Although the claim is adequately alleged, we express no view as to whether she ultimately may be able to prove that she "detrimentally relied on the policy [manual] in accepting or continuing employment," Baron, 271 F.3d at 85, or that the outcome of NYU's decision to terminate her would have been

5

any different had the hearing been afforded to her in the first instance.  As a result, the relief that the district court is able to grant, if any, may be narrow as well.

For the foregoing reasons, we hereby **AFFIRM IN PART** and **VACATE IN PART** the judgment of the district court, and we **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK
