THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* VERNON L. KNAPP, Appellant.

Third Department, July 26, 1962.

*Robert J. McKeegan, District Attorney* of Delaware County, for respondent.

*Frank R. Reeves* for appellant.

*Per Curiam.* Appeal from a judgment of the Delaware County Court convicting appellant of the crime of assault, second degree (Penal Law, § 242, subd. 5).

At about 3:45 A.M., on the morning of August 7, 1960, State troopers patrolling Route 17 observed a car driven by appellant cross a double white line in attempting to pass another vehicle. Pursuing the car the troopers overtook it, pulled along side and signalled appellant to stop his vehicle. Instead appellant accelerated, forced the troopers' car onto the shoulder and sped off. A wild chase ensued covering a distance of roughly 125 miles through portions of Sullivan and Delaware Counties at speeds as high as 70 to 100 miles per hour. During the chase roadblocks were established to apprehend appellant. At the first two roadblocks which appellant encountered on his spree, Police Officer McClenathan of the Village of Walton had parked his car, with its red light flashing, in the lane adjacent to the lane in which the appellant was proceeding and stood in the traffic lane waving a flashlight back and forth to indicate that appellant should stop. At both roadblocks appellant not only failed to slow down from his 65 to 70 miles per hour speed but failed to swerve at all, requiring Officer McClenathan to jump from the path of the oncoming vehicle. When finally apprehended appellant was taken before Justice of the Peace BALDWIN in Downsville where he plead guilty to driving a motor vehicle while his license was revoked, which plea of guilty to the underlying misdemeanor was proven at the trial. (Cf. *Squadrito* v. *Griebsch,* 1 N Y 2d 471.) Later he was taken to Walton and arraigned before the Police Justice of the Village of Walton on a charge of assault, second degree, in violation of subdivision 5

of section 242 of the Penal Law arising from his running through the second roadblock set up by Officer McClenathan. Subsequently he was indicted and after trial by jury convicted on this charge.

Appellant contends that the record does not warrant his conviction for assault, second degree. We cannot agree. There is ample evidence in the record to substantiate the jury's finding that appellant in fact committed an assault on Officer McClenathan and that he possessed the requisite criminal intent at the time he committed the assault. Concededly, appellant plead guilty to driving without a license. In fact, he stated it was his fear of being picked up for this offense, for which he had been convicted on at least four previous occasions, the last two convictions resulting in a suspended jail sentence which he was warned he would have to serve if he were picked up again, which prompted him to try to evade the State troopers. In addition appellant admitted at his trial not only that he was speeding throughout the chase and specifically when he went through the first and second roadblocks established by McClenathan but also that in fact he had crossed the double white line in the presence of the troopers, which violation precipitated the chase. On this state of the record appellant was subject to lawful apprehension at the time he assaulted Officer McClenathan, such violation, among others, having been committed in his presence (see Code Crim. Pro., § 177; *Squadrito* v. *Griebsch, supra*) and thus subdivision 5 of section 242 was properly invoked. No exception was taken to the charge nor was it mentioned by defendant's counsel or urged as erroneous by defendant's counsel in his brief or on oral argument. We regard any errors as insubstantial. We find no merit to appellant's contentions that there was any merger or double jeopardy, the sole contentions raised.

The judgment of conviction should be affirmed, without costs.

BERGAN, P. J. (dissenting). We have here a conviction for a felonious assault on a police officer under subdivision 5 of section 242 of the Penal Law, with the use of a motor vehicle without any physical injury to the officer; and, indeed, without any physical contact with his body.

An imminent possibility of injury, coupled with a willful intent by the accused to inflict injury, can constitute an assault (*Liebstadter* v. *Federgreen,* 80 Hun 245); but it is essential that there be a " reasonable apprehension of receiving an immediate battery " (*People* v. *Wood,* 10 A D 2d 231, 236; *State* v. *Barry,* 45 Mont. 598; see, also, 6 C.J.S., Assault and Battery, § 63).

The legal and factual problem presented by the frustration or abandonment of an attempt at assault before there is any physical contact was carefully analyzed by the Michigan Supreme Court in *People* v. *Lilley* (43 Mich. 521, 525). The criminal act which could do physical damage '' must have proceeded far enough towards a consummation thereof '' to constitute an assault; and this is a question for the jury '' under proper instructions ''. If the act which would cause the injury is either prevented or abandoned while '' at a distance too great '' to constitute '' an actual assault '' a crime is not made out.

In the case before us, the act tending to injury was prevented from causing physical contact by McClenathan's stepping out of the way of the car. If he stepped out of the way well in advance of imminent contact, a case would not be made out; for it seems clear that the reasonable apprehension of immediate violence is the indispensable condition to an assault which might, but does not, reach the point of physical contact.

It is the occurrence of the second roadblock, and not the first one, that constitutes the basis of the charge here, as it is conceded by the People on argument. On this part of the record the factual showing is conclusory and meagre; and the record is in quite an unsatisfactory condition.

Since the movement of McClenathan took him out of danger at a sufficient distance from the defendant's car to prevent contact, time, space and proximity become vital if an assault is to be spelled out. When defendant passed the roadblock the first time, McClenathan displayed an intention and ability to avoid being hit by getting out of the way in time; and it might be reasonable to expect he would successfully avoid contact the second time, as he did.

Distance, visibility, defendant's awareness of the danger and opportunity to avoid it or not to avoid it; or to form a willful purpose to injure, accordingly, all became matters of decisive importance in the case. The complainant McClenathan himself tells us substantially nothing about these matters. He testified to a general description of the first roadblock; that defendant passed through; and of his jumping out of the way; but the facts of the occurrence at the second roadblock, which are the basis of this charge of assault, are narrated by him in the merest generality.

This is McClenathan's own description of the facts:
'' Q. What happened this time? A. The same thing happened.
'' Q. Were you waving your flashlight again? A. Yes, I was.
'' Q. About how far away would you say defendant's vehicle

was when you first observed his headlights coming at you? A. About 500 feet."

The witness said defendant did not "apply his brakes" to "his observation" and "did not attempt to miss" the witness. A failure of an "attempt to miss" a person interposing himself before a moving vehicle is not necessarily an assault; this could well result from a mere slowness of reaction or even carelessness. The crime could exist only by a willful attempt to strike.

This question was then asked McClenathan as to the second occurrence: "Q. What did you do this time, if anything? A. I shot four times at him and attempted to stop him." Essentially this is McClenathan's whole description of the crime of assault of which defendant has been convicted. What "the same thing happened" means is a deduction. It is not a narration of any event. It does not appear the witness felt he was in "danger" at 500 feet away from the car, nor is it shown where the car was when he got out of the way. The greater the distance, of course, the less basis remains for a finding of imminent peril.

Indeed, there is a singular ambiguity in the record about the description of the actual events of the crime. Trooper Giffin, who was in the car following defendant, but not driving it, testified that at the second roadblock McClenathan was "in the other lane, not quite as far out in the road as he did the other time". The difference of location of McClenathan or to what extent the danger was then reduced or minimized, are not spelled out.

For example, Officer Giffin bulked together into an undifferentiated conclusion the events of the first and second roadblocks in this manner: "Q. Did he swerve off the paved portion of the road? A. No, he headed right for the police officer both times." As to the first roadblock Giffin testified to more detail. He said "He [McClenathan] stayed there and at the time I thought it was too long and at the last second I saw him jump out of the path that the vehicle was coming in. It seemed at a distance of three or four feet." But it is very clear this did not relate to the crime charged; but to the separate occurrence at the first roadblock.

Although the general description of the proximity of the trooper's car which was following defendant was that it was very close to it "approximately 200 feet behind"; there is proof that after defendant's car passed the second roadblock Officer McClenathan was able to draw his pistol and fire four shots at defendant. This means that he had time to recover himself from jumping behind his police car, draw the pistol, take

aim, and shoot four times before the trooper's car following at "approximately 200 feet" at high speed passed the roadblock since, of course, after that time he would not have fired the shots.

In the light of these unusual, if not quite unique, ingredients of an assault, the case was one of marked difficulty for any jury to decide and of corresponding difficulty for a Judge to charge.

It is fair to say that the Judge gave the jury no useful instruction on the nature of their problem. In a charge which could not have endured over a few minutes he merely told the jury in broad terms about the burden of proof, read some Penal Law provisions on assault, and in general language instructed the jury to find defendant guilty or not guilty. His description of the actual problem which the jury had before it is in a single generalized paragraph.

Defendant had testified that he did not observe any person standing in the space at the roadblock through which he passed. If this had been found as a fact, the jury's duty would have been to acquit, since a willful intention to strike the officer was vital to the case. The court gave the jury no instruction on this point, and, indeed, omitted entirely to mention it. It was its duty to do so. The instructions of the Judge were not adequate to the case (*People* v. *Finn*, 275 App. Div. 65, 67). This is a case where, in deference to due process, protection on appeal must be accorded to the defendant under section 527 of the Code of Criminal Procedure, without regard to exceptions noted at the trial.

I agree also, with the view expressed by Judge GIBSON that there was an absence of specification of the underlying crime in the indictment and that the charge to the jury made no reference to this matter.

There has, too, been an unreasonable delay in presenting this appeal. The sentence of one to two years was pronounced February 9, 1961; not until over a year later, after the minimum sentence had run, was the appeal argued in this court.

The judgment should be reversed on the law and the facts and a new trial ordered.

GIBSON, J. (dissenting). There was no specification by the indictment or otherwise of the underlying crime or infraction for which the officer might arrest and which, therefore, might constitute the basis for a conviction of assault, but it seems to have been assumed that it was that of operating without a license. Nevertheless, other offenses were shown upon the trial and, indeed, are mentioned in the prevailing opinion here.

The court's charge was silent as to any underlying offense. In my view, the jury should have been instructed as to the elements necessary to the proof of each crime or infraction upon which the People relied as predicative of and precedent to the assault charged in the indictment (*People* v. *Dority*, 282 App. Div. 995, 996); and this, particularly, in view of the District Attorney's remarks in his summation as to speeding and as to the assault charged being the second assault. I concur in Presiding Justice BERGAN's conclusion that the charge was otherwise incomplete. I vote for reversal and a new trial.

COON, REYNOLDS and TAYLOR, JJ., concur in *Per Curiam* opinion; BERGAN, P. J., dissents in opinion; GIBSON, J., dissents, in a memorandum.

Judgment of conviction affirmed.