Maureen CARROLL, Plaintiff,

v.

BAYERICHE LANDESBANK, BLB Capital, LLC, Ronald Aldo Bertolini, John Warden, Bert Von Stuelpnagel, Defendants.

No. 99 CIV. 2892 CBM.

United States District Court, S.D. New York.

Dec. 13, 2000.

Diana Israelashvili, Diane Paolicelli, Levy Phillips & Konigsberg, LLP, New York City, for Plaintiff.

Brian J. Clark, Clifton Budd & DeMaria, LLP, New York City, for Defendants.

### MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff Maureen Carroll filed this action on April 21, 1999 against defendants, Bayerische Landesbank ("Bayerische"), BLB Capital, LLC ("BLB"), Ronald Aldo Bertolini ("Bertolini"), John Warden ("Warden"), and Bert von Stuelpnagel ("von Stuelpnagel"), alleging discrimination on the basis of sex, sexual harassment, and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), New York State Executive Law, and the New York City Administrative Code. Plaintiff also alleges intentional infliction of extreme emotional distress, breach of contract, assault, battery, and defamation.

On August 26, 1999, Judge Wood granted defendants' motion to dismiss plaintiff's Title VII claims against the individual defendants, and denied motions to dismiss plaintiff's intentional infliction of extreme emotional distress claim and defamation claim. Defendants now move for summary judgment dismissing the remaining claims in the complaint. Plaintiff cross-moves for partial summary judgment, in relation to her breach of contract claim, on the validity of the addendum to the April 9, 1998 letter of employment as the sole binding contract between the parties. For the reasons stated below, this court DENIES defendants' motion for summary judgment as to all of plaintiff's remaining claims and DENIES plaintiff's motion for partial summary judgment.

## I. BACKGROUND [1]

Plaintiff is a former female executive of defendant banking institutions Bayerische and BLB ("bank defendants"). Defendant Bertolini was vice president and treasurer for Bayerische and manager of BLB. Defendant John Warden was an employee of Bayerische and BLB. Defendant von Stuelpnagel was executive vice president of Bayerische and manager of BLB.

On April 10, 1998, plaintiff entered into an employment contract with bank defendants and began work on May 1, 1998. Plaintiff's primary responsibility was to make the required government filings for the registration of BLB as an in-house securities broker for Bayerische.

Plaintiff asserts that while working at BLB, she was subjected to degrading remarks and threats over a four-week period and that she was fired after she complained about these remarks. Plaintiff states that Bertolini would frequently inquire about plaintiff's past sexual relationships and dating practices. On one occasion, Bertolini told plaintiff that "you have to be a whore to keep your job," and suggested that she sleep with the President of Bayerische to ensure her continued employment. Bertolini also allegedly told plaintiff that she was a "thick headed Irish woman who has a problem getting along with men," that "it is important to have a penis whether it is hard or soft," and that he would derive "extreme pleasure in pulling [plaintiff's] hair out, one strand at a time." Plaintiff also alleges that she was never provided with business cards, stationary, an office, or other support services commonly provided to male executives.

On June 3, 1998, plaintiff reported Bertolini's remarks to Bayerische's general counsel, as required under Bayerische's sexual harassment policy. The next day, plaintiff alleges that Warden heatedly stormed into plaintiff's office and physically pushed and shoved her. Allegedly this was done at the direction of Bertolini.

---

**1.** The following background is drawn from    plaintiff's complaint.

The following day, June 5, 1998, plaintiff received a memorandum from von Stuelpnagel that allegedly accused her of assaulting Warden. On June 8 and 9, 1998, plaintiff met with von Stuelpnagel, who interrogated her about her alleged conduct, but refused to discuss plaintiff's complaints of sexual harassment. Plaintiff alleges that defendants never conducted any investigation into her complaints of sexual harassment by Bertolini. On June 11, 1998, plaintiff's employment was terminated without cause and without the continuation salary mentioned in the addendum to plaintiff's letter of employment.

## II. DISCUSSION

Defendants seek summary judgment of plaintiff's claims of (1) sexual harassment under Title VII, as well as New York state and New York City law; (2) retaliation under Title VII; (3) intentional infliction of emotional distress; (4) breach of contract; (5) assault and battery; and (6) defamation. Plaintiff also moves for partial summary judgment that the addendum to her employment letter is the sole binding contract between defendants and plaintiff.

A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on such a motion, the district court is to view the evidence in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See, e.g., Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir.1988). The role of the court on a motion for summary judgment is not to try issues of fact but only to determine whether there are issues of fact to be tried. *See, e.g., Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

Courts should be especially cautious about granting summary judgment to an employer in a sexual harassment case, as the issues of severity and pervasiveness should be left to the discretion of the jury. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997); *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994) (summary judgement should be applied sparingly in employment discrimination cases).

### A. Sexual Harassment Claim

Plaintiff alleges sexual harassment under Title VII against the bank defendants and under similar provisions of New York state and city law against the bank defendants and the individual defendants.

Defendants argue that plaintiff cannot establish a prima facie case of hostile work environment sexual harassment under Title VII of the Civil Rights Act of 1964 or under state or city law because the conduct alleged by plaintiff does not rise to the level of severe or pervasive conduct.

Title VII makes it "an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The elements of a Title VII hostile work environment sexual harassment claim are: (1) the victim is member of a protected class; (2) there is unwelcome sexual harassment, (3) which is based on sex, (4) that affects a term, condition, or privilege of employment, and (5) there may be vicarious liability. *See Meri-*

*tor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The standards under state and city law are in accord with the federal standards under Title VII. *See Matter of Miller Brewing Co. v. State Div. of Human Rights*, 66 N.Y.2d 937, 938, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985).

■ A Title VII hostile work environment claim will succeed when the conduct at issue is so "severe or pervasive" as to create an "objectively and subjectively" hostile or abusive environment. *See Richardson v. New York State Dept. of Corr. Ser.*, 180 F.3d 426, 436 (2d Cir.1999). An employee must subjectively perceive the environment to be abusive and the environment must be one that a reasonable person under like circumstances would find hostile or abusive. *See Harris v. Forklift Sys.*, 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In considering whether conduct is severe or pervasive, courts consider the "totality of the circumstances," and do so "cumulatively." *Richardson*, 180 F.3d at 437 (*quoting Schwapp*, 118 F.3d at 111). The relevant factors include:

> (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a "mere offensive utterance;" (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted.

*Richardson*, 180 F.3d at 437 (*quoting Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 767–68 (2d Cir.1998)).

■ Viewing the evidence in the light most favorable to the plaintiff, this court finds that the plaintiff has presented evidence which would permit a reasonable trier of fact to find that the conduct at issue created a hostile work environment. Plaintiff has asserted that from the beginning of plaintiff's employment and for about four or five weeks afterward, Bertolini subjected plaintiff to sexual comments and insults that caused her to fear physical

harm from Bertolini and caused her psychological distress and physical sickness. *See* Ex. A, Carroll Dep. at 112, 117, 169, 342, 386–390. Furthermore, there are genuine issues of material fact with respect to what actions constituted the harassing conduct and whether or not these actions were sexual in nature.

**i. Employer Liability for Sexual Harassment by a Supervisor**

■ Bertolini was plaintiff's supervisor. When a supervisor is the perpetrator of sexual harassment, then the employer can be held vicariously and absolutely liable. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). However, the employer has an affirmative defense to strict liability if it can show: (1) the employer used reasonable care to prevent and promptly correct any sexually harassing behavior, and (2) the employee unreasonably failed to make use of any preventive or corrective opportunities provided by the employer to avoid harm. *See Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. This affirmative defense is available unless the supervisor's harassment results in a tangible employment action, such as discharge, demotion, or undesirable reassignment. *See Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257.

■ Whether the affirmative defense is available to defendants in this case and whether defendants can establish the defense cannot be resolved at this time because of the existence of genuine issues of material fact, such as: (1) whether plaintiff complained about sexual harassment before or after receiving the June 5, 1998 memorandum informing her of the bank's investigation against her; (2) whether plaintiff's termination resulted from her alleged conduct or from her complaints of sexual harassment; and (3) whether defen-

dants' attempts to meet with plaintiff were part of an investigation of the complaints against plaintiff or part of an investigation of plaintiff's charges of sexual harassment.

### B. Retaliation Claim

■ In order to set forth a prima facie case of unlawful retaliation under Title VII, a plaintiff must show: (1) participation in a protected activity known to defendant; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995), *abrogated on other grounds by Burlington Ind. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). After plaintiff has established all three elements, the burden shifts to defendant to articulate a legitimate non-discriminatory reason for the challenged employment action. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Defendants do not have to prove their reasons were non-discriminatory; they merely have to articulate them. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff must then prove that the stated reason was false and à pretext for unlawful retaliation. *See Hicks*, 509 U.S. at 511, 113 S.Ct. 2742.

■ As to the prima facie case, a genuine issue of material fact exists as to whether plaintiff's termination resulted from her complaints of sexual harassment or from the allegations of plaintiff's own misconduct. Furthermore, whether defendants' legitimate, non-discriminatory reasons for terminating plaintiff are a pretext for unlawful discrimination involves disputed issues of material fact, such as (1) whether plaintiff engaged in abusive behavior and (2) whether plaintiff made misrepresentations in her resume.

### C. Intentional Infliction of Emotional Distress Claim

■ In order to set forth the cause of action for intentional infliction of emotional distress under New York law, plaintiff must prove: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress. *See Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993). This court finds, regarding the evidence in the light most favorable to the plaintiff, that a reasonable trier of fact could regard defendants' alleged conduct as extreme and outrageous. This court declines to dispose of this claim on this motion due to genuine issues of material fact concerning defendants' alleged conduct.

### D. Breach of Contract Claim and Plaintiff's Partial Motion for Summary Judgment

Defendants argue that plaintiff cannot establish a breach of contract claim based on plaintiff's April 9, 1998 letter of employment and addendum. For the purposes of their motion, defendants assume the letter of employment constitutes a binding contract. The letter stated that plaintiff would be a vice-president of BLB, she would be an at-will employee and that during her first six weeks of orientation she could be terminated without notice. The addendum stated that if the bank "decided not to pursue the establishing of BLB ... or to dissolve it within a twelve month period commencing May 1, 1998," plaintiff would be entitled to the remainder of her first year's salary. The addendum also set out that "upon the establishment" of BLB, plaintiff would be president of BLB and (1) plaintiff's BLB letter of employment would become invalid; (2) her salary would be $120,000 with bonus; and (3) she could only be terminated for cause. *See* Def.'s Ex. A.

Plaintiff seeks partial summary judgment that the addendum is the sole binding contract between defendants and plaintiff. Plaintiff argues that the addendum states that it supercedes the employment letter "upon the establishment of BLB." Plaintiff argues that BLB was incorporated in the fall of 1997, before plaintiff began working for defendants in May 1998, and therefore the addendum supercedes the letter of employment.

▇ This court disagrees with plaintiff's reading of the addendum. Although BLB was already incorporated in 1997, the language of the addendum would not make sense if establishment meant incorporation since the language looks forward to a time when BLB would be established. The addendum is dated April 9, 1998. Clearly at that time, none of the parties thought BLB was established. Rather, defendants' interpretation that established meant licensed as a broker-dealer—which had yet to occur—is more in keeping with the future-looking language of the addendum. Because BLB did not become established during plaintiff's six weeks of employment, the addendum did not supercede the letter of employment and did not become the sole binding contract between the parties.

Plaintiff alleges breach of the letter of employment and addendum because she did not receive continuation salary as specified in the addendum. Defendants, in seeking summary judgment on plaintiff's breach of contract claim, argue that no breach occurred because plaintiff was not entitled to continuation salary. Defendants assert that the terms of the addendum required that plaintiff be given continuation salary only if she was terminated for the reason that the bank decided not to pursue the establishment of BLB within the twelve months following May 1, 1998. Defendants state that plaintiff was not terminated pursuant to a decision to discontinue the BLB project. However, plaintiff points to the fact that the only other employee hired to be a BLB employee was terminated just one month after plaintiff because the BLB project was being put on hold.

▇ This court finds that whether or not continuation salary was required under the addendum depends upon a disputed issue of fact. The addendum states that plaintiff is entitled to continuation salary if the BLB project was not pursued or was dissolved and as a result plaintiff was let go. Because the project was discontinued only one month after plaintiff was fired, a reasonable trier of fact could find that defendants were motivated to establish other reasons for plaintiff's termination by the impending discontinuation of the BLB project.

### E. Assault and Battery

### i. Against Defendant Warden

▇ To recover damages for battery, plaintiff must prove that there was bodily contact, that the contact was harmful or offensive, and that defendant intended to make contact without plaintiff's consent. *See Johnson v. Suffolk County Police Dept.,* 245 A.D.2d 340, 665 N.Y.S.2d 440, 440 (N.Y.App.Div.1997). An action for battery may be sustained without showing that the actor intended to cause injury as a result of intended contact, but only that the intended contact was itself "offensive," wrongful under all circumstances. *See Zgraggen v. Wilsey,* 200 A.D.2d 818, 606 N.Y.S.2d 444, 445 (N.Y.App.Div.1994). In order to recover damages for assault, plaintiff must show "imminent apprehension" of "harmful or offensive contact." *See Hayes v. Schultz,* 150 A.D.2d 522, 541 N.Y.S.2d 115, 116 (N.Y.App.Div.1989). The apprehension of plaintiff must be reasonable. *See People v. Knapp,* 17 A.D.2d 65, 231 N.Y.S.2d 341, 342–43 (N.Y.App.Div.1962). "Words not accompanied by circumstances inducing a reasonable apprehension of bodily harm, such as movements of drawing back a fist, aiming a blow, or the show of a weapon, do not constitute an assault." *Williams v.*

*Port Authority of New York & New Jersey,* 880 F.Supp. 980, 994 (E.D.N.Y.1995).

■ Plaintiff alleges that Warden was pointing at plaintiff and poked his finger into her shoulder. Plaintiff also alleges that while plaintiff was leaving the office, Warden pushed her office door, which then pushed her, causing her to be pushed against the wall. According to defendants, Warden was in plaintiff's office to work on her computer and that any touching that occurred was a result of the fact that only one person at a time could be in front of plaintiff's computer or walk out of the office door. Plaintiff states that the touching was not caused by a "cramped workspace" as argued by defendant, and that Warden stormed into her office, came at her, and that plaintiff "was ducking as if it was a fist fight." *See* Pl.'s Ex. A, Carroll Dep. at 82, 85, 88. Because these conflicting characterizations of the incident create disputed issues of fact, summary judgment is inappropriate as to plaintiff's claim of assault and battery against defendant Warden.

### ii. Against the Bank Defendants

Defendants argue that although Warden did not commit assault and battery, even if he did, his actions should not be imputed to the bank defendants because the actions were outside the scope of his employment and done with a purpose foreign to the bank defendants' interest. Therefore, defendants argue that plaintiffs' claims against the bank defendants are barred by the New York Workers' Compensation Law. *See* N.Y. Work. Comp. law § 29; *Branch v. Sony Music Entertainment, Inc.,* 1999 WL 20866, *3, 1999 U.S. Dist. LEXIS 354, at *9 (S.D.N.Y.1999) ("While an act may be intentionally committed by the perpetrator who worked for an employer, unless it was perpetrated at the employer's direction or instigation, the exemption from the Workers' Compensation law is inapplicable."). Plaintiff asserts that bank defendants are liable under respondeat superior for Warden's assault,

because Warden acted at the direction or instigation of the bank defendants.

■ This court finds that it is a disputed issue of fact whether Warden assaulted plaintiff at the direction of the bank defendants.

### F. Defamation

Plaintiff's defamation claim rests on three allegations: (1) on June 4, 1998, Bertolini accused plaintiff of having verbally abused and threatened him in May 1998; (2) on June 4, 1998, Warden accused plaintiff of having verbally and physically assaulted him; and (3) on June 5, 1998, von Stuelpnagel accused plaintiff in a memorandum of having verbally and physically abused Bertolini and Warden and stated that there would be an investigation.

■ The four elements necessary to establish a prima facie case of defamation are: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault; and (4) harm caused by the publication. *See Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 379, 397 N.Y.S.2d 943, 366 N.E.2d 1299 (1977).

■ Defendants argue that plaintiff's defamation claim is barred by a qualified privilege. A "communication made by one person to another upon a subject in which both have an interest is protected by a qualified privilege." *Stillman v. Ford,* 22 N.Y.2d 48, 53, 290 N.Y.S.2d 893, 238 N.E.2d 304 (1968). For the privilege to apply, the person making the communication must have an interest or duty to be upheld, the communication must be made to a party with a corresponding interest or duty, and the content of the communication must be limited to the purpose for which it is made. *See Shapiro v. Health Ins. Plan of Greater New York,* 7 N.Y.2d 56, 60–61, 194 N.Y.S.2d 509, 163 N.E.2d 333 (1959). Statements to employees regarding allegations of misconduct are protected by qualified privilege. *See Boyle v.*

*Stiefel Laboratories, Inc., et. al.,* 204 A.D.2d 872, 612 N.Y.S.2d 469, 471–72 (N.Y.App.Div.1994). Once the defendant establishes that a communication is entitled to a qualified privilege, then the burden shifts to the plaintiff to show actual malice or ill-will motivated the defendant. Defendants argue that there is no evidence of malice.

Plaintiff argues that the qualified privilege does not apply because defendants did act with malice. Plaintiff argues that defendants used the statements and memorandum to induce plaintiff to resign. Plaintiff asserts that the allegations in the June 5, 1998 memorandum are false and the falsehoods were acknowledged by von Stuelpnagel at his deposition. Plaintiff states that this evinces that von Stuelpnagel was at least reckless as to determining the truth of the statements in his memorandum, which, in turn, demonstrates malice. Furthermore, plaintiff argues that the timing of the memorandum, published immediately after she complained of sexual harassment, demonstrates that the memorandum was prepared with the malicious intention of forcing plaintiff's resignation.

This court finds that the events leading up to the publication of the June 5, 1998 memorandum are in dispute and prevent this court from determining the issue of malice on this motion.

## III. CONCLUSION

Because there are genuine issues of material fact concerning all of the claims at issue, this court DENIES defendants' motion for summary judgment and DENIES plaintiff's motion for partial summary judgment.